T.C. Memo. 2017-62

UNITED STATES TAX COURT

VINCENT J. CASTIGLIOLA AND MARIE CASTIGLIOLA, ET AL.,[1]
Petitioners <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 12733-14, 12734-14,     Filed April 12, 2017.
12939-14.

<u>Robert Michael Galloway</u>, for petitioners.

<u>Rebecca Dance Harris</u> and <u>Jason D. Laseter</u>, for respondent.

[1]Cases of the following petitioners are consolidated herewith: John Banahan and Deborah Banahan, docket No. 12734-14; and Harry B. Mullen and Marie A. Mullen, docket No. 12939-14.

[*2]       MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, Judge:  Respondent determined deficiencies in petitioners' Federal income tax and section 6662(a) accuracy-related penalties, as follows:[2]

| Petitioners | 2008 | 2009 | 2010 |
|---|---|---|---|
| Vincent J. and Marie Castigliola | | | |
| Deficiency | $8,278.00 | $5,566.00 | $4,013.00 |
| Sec. 6662(a) penalty | 1,655.60 | 1,113.20 | 802.60 |
| John and Deborah Banahan | | | |
| Deficiency | 9,196.00 | 8,477.00 | 6,418.00 |
| Sec. 6662(a) penalty | 1,839.20 | 1,695.40 | 1,283.60 |
| Harry B. and Marie A. Mullen | | | |
| Deficiency | 4,168.00 | 3,692.00 | 3,126.00 |
| Sec. 6662(a) penalty | 833.60 | 738.40 | 625.20 |

The issues for decision are whether:  (1) Mr. Castigliola, Mr. Banahan, and Mr. Mullen, as member-managers of a limited liability company, are each entitled to benefit from the self-employment income exclusion for limited partners under section 1402(a)(13) for a portion of their partnership distributions; (2) Mr. Castigliola, Mr. Banahan, and Mr. Mullen had additional income in 2010 in the form of undistributed funds held in a trust account; and (3) petitioners are

---

[2]All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

**[*3]** liable for accuracy-related penalties under section 6662(a) for 2008, 2009, and 2010.

## FINDINGS OF FACT

Petitioners timely filed joint Forms 1040, U.S. Individual Income Tax Return, for 2008, 2009, and 2010, and they resided in Mississippi when the petitions were timely filed.

Mr. Castigliola, Mr. Banahan, and Mr. Mullen are, and were at all relevant times, attorneys licensed to practice law in the State of Mississippi. Originally, they practiced law through a general partnership, but on July 12, 2001, they reorganized their law firm as a professional limited liability company--Bryan, Nelson, Schroeder, Castigliola & Banahan, PLLC (PLLC).[3] In 2005 the PLLC's office and many of its records were destroyed in Hurricane Katrina, but the members recovered and continued their practice.

---

[3]Under Mississippi law, a professional limited liability company is a type of limited liability company that may be formed only for the purpose of rendering certain professional services, including legal services. Miss. Code Ann. sec. 79-29-902(f) and (g) (2009). All the members must be authorized by law to render the services that the professional limited liability company offers. Id. sec. 79-29-909(1). Formation of a professional limited liability company requires an additional provision in the certificate of formation electing professional limited liability company status. Id. sec. 79-29-903.

[*4] Throughout the years at issue Mr. Castigliola, Mr. Banahan, and Mr. Mullen were engaged in the practice of law solely through the PLLC. They were members of the PLLC during the years at issue, and the PLLC is, and has always been, member-managed. The PLLC has never had a written operating agreement. The PLLC timely filed Forms 1065, U.S. Return of Partnership Income, for 2008, 2009, and 2010.[4]

For the years at issue, the members' compensation agreement required guaranteed payments to each member; the guaranteed payments were commensurate with local legal salaries as determined by a survey of legal salaries in the area.[5] Any net profits of the PLLC in excess of amounts paid out as

---

[4]A Form 4605-A, Examination Changes - Partnerships, Fiduciaries, S Corporations, and Interest Charge Domestic International Sales Corporations (Unagreed and Excepted Agreed), was issued on March 13, 2012, to the PLLC for the years at issue. Petitioners' notices of deficiency resulted from the partnership adjustments.

[5]The members received the following guaranteed payments for each of the years at issue:

| Member | 2008 | 2009 | 2010 |
|---|---|---|---|
| J. Banahan | $150,000 | $150,000 | $150,000 |
| V. Castigliola | 150,000 | 150,000 | 150,000 |
| H. Mullen | 125,000 | 125,000 | 125,000 |

**[*5]** guaranteed payments were distributed among the members in accordance with the members' agreement.

Petitioners and the PLLC shared the same certified public accountant (CPA).[6] The CPA was an accountant for many years and served in several positions in the National Association of State Boards of Accountancy, including a three-year term on the board of directors. He also served eight years with the Alabama State Bar of Accountancy. Around the time the PLLC was formed in 2001, the members met with the CPA to discuss the new PLLC entity. The CPA had prepared Federal income tax returns for petitioners (and for the general partnership that preceded the PLLC) for many years and was familiar with the history of their law firm as a result. The members explained their situation to the CPA and asked for advice on how to report payments from the PLLC to the members. On the basis of the CPA's advice, they reported all guaranteed payments from the PLLC to the members as self-employment income subject to self-employment tax, but they did not remit self-employment tax on the excess of their distributive shares over the guaranteed payments they received.

At all relevant times the PLLC maintained a Mississippi Bar Foundation Interest on Lawyer's Trust Account at a local bank (trust account). For the years

---

[6]Petitioners' CPA passed away before trial.

**[*6]** at issue, as part of the legal practice, the PLLC handled subrogation payments for State Farm Mutual Automobile Insurance Co. (State Farm). The PLLC negotiated payment plans with uninsured individuals involved in automobile accidents with State Farm policyholders. When these uninsured individuals made payments to the PLLC, it deposited the payments into the trust account. Approximately twice per year the PLLC disbursed subrogation payments from its trust account to State Farm. When it disbursed a subrogation payment to State Farm, the PLLC also transferred the compensation due to the PLLC from its trust account to its operating account. At the end of 2010 the trust account held $15,167 of undistributed funds; the members do not know to whom this amount belongs.

## OPINION

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous by a preponderance of the evidence. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Yet where the standard of proof is preponderance of the evidence (as it is for all issues in this case), the Court may decide the case on the weight of the evidence and not on an allocation of the

**[\*7]** burden of proof.  <u>Knudsen v. Commissioner</u>, 131 T.C. 185, 189 (2008); <u>Estate</u> <u>of Bongard v. Commissioner</u>, 124 T.C. 95, 111 (2005).

I.    <u>Self-Employment Tax</u>

Section 1401(a) imposes a tax on the self-employment income of every individual for a taxable year (self-employment tax).  Self-employment income is defined as "the net earnings from self-employment derived by an individual * * * during any taxable year" excluding (1) the portion in excess of the Social Security wage base limitation for the year[7] as well as (2) all earnings from self-employment if the total amount of the individual's net earnings from self-employment for the taxable year is less than $400.  Sec. 1402(b).

Section 1402(a) defines net earnings from self-employment as

the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business, plus his distributive share (whether or not distributed) of income or loss described in section 702(a)(8) from any trade or business carried on by a partnership of which he is a member * * *.

Section 1402(a)(13) provides the following exclusion from self-employment income:

---

[7]The Social Security wage base limitation was $102,000 for 2008, and $106,800 for 2009 and 2010.

**[*8]**   [T]here shall be excluded the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in section 707(c) to that partner for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration for those services * * *.

Petitioners contend that this exclusion applies to the amounts of the members' distributive shares in excess of their guaranteed payments. Respondent argues that the members were not limited partners for the purposes of section 1402(a)(13), and that, therefore, the exclusion does not apply.

Section 1402(a)(13) was originally enacted in 1977 (as section 1402(a)(12)), before limited liability companies were widely used or generally treated as partnerships for Federal tax purposes.[8] Social Security Amendments of 1977, Pub. L. No. 95-216, sec. 313(b), 91 Stat. at 1536; Renkemeyer, Campbell, & Weaver, LLP v. Commissioner (Renkemeyer), 136 T.C. 137, 148 (2011). As the Court noted in Renkemeyer, no statutory or regulatory authority defines "limited partner" for the purposes of section 1402(a)(13). See id. at 148-149. Because the term is not defined, the Court applies accepted principles of statutory construction

_____

[8]The first statute authorizing limited liability companies (LLCs) was adopted in Wyoming in 1977, but the Federal tax treatment of LLCs remained relatively unclear until 1988, when Rev. Rul. 88-76, 1988-2 C.B. 360, clarified that properly organized LLCs would be treated as partnerships. 1 Ribstein & Keatinge, Limited Liability Companies, sec. 1:2 (December 2016 update). Today all States have LLC statutes and the LLC form is widely used. Id.

**[*9]** to ascertain congressional intent. It is a well-established rule of construction that if a statute does not define a term, the term is to be given its ordinary meaning at the time of enactment. Gates v. Commissioner, 135 T.C. 1, 6 (2010); see Perrin v. United States, 444 U.S. 37, 42 (1979).

Renkemeyer indicated that the meaning of "limited partner" is not necessarily confined solely to the limited partnership context. See 136 T.C. at 146-150; cf. Garnett v. Commissioner, 132 T.C. 368, 377-378 (2009) (finding that under section 469(h)(2) "limited partner" is not necessarily confined to the limited partnership context). Therefore, following the approach taken in Renkemeyer, our first inquiry is whether the person claiming the section 1402(a)(13) exemption held a position in an entity treated as a partnership for Federal tax purposes that is functionally equivalent to that of a limited partner in a limited partnership. Mr. Castigliola, Mr. Banahan, and Mr. Mullen were all members of a member-managed PLLC. Consequently, the issue is whether a member of such a PLLC is functionally equivalent to a limited partner in a limited partnership.

A limited partnership has two classes of partners, general and limited. E.g., Garnett v. Commissioner, 132 T.C. at 375. General partners typically have management power and unlimited personal liability. 1 Bromberg & Ribstein, Partnership, sec. 1.01(B)(3) (2015-3 Supp.). On the other hand, limited partners

**[*10]** typically lack management power but enjoy immunity from liability for debts of the partnership.  Id.

More specifically, the exact meaning of "limited partner" may vary slightly from State to State.  The Uniform Law Commission drafted the Uniform Limited Partnership Act in 1916 (ULPA (1916)), and the Revised Uniform Limited Partnership Act in 1976 (RULPA (1976)).  Amendments were added to RULPA (1976) in 1985 (RULPA (1985)).  Versions of these uniform acts have been adopted in most States, sometimes with modifications.

Section 7 of ULPA (1916) states:  "A limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business."  ULPA (1916) allowed limited partners a narrow set of rights but did not specifically define which activities a limited partner could perform without losing limited partner status.  See id. sec. 10 (allowing limited partners the rights to inspect books, demand an accounting of partnership affairs, and receive a share of the profits and return of capital, and also allowing limited partners the same right as general partners to request dissolution and winding up of the partnership).

Section 303(a) of RULPA (1976) provides--in terms almost identical to those of ULPA (1916)--that a "limited partner" would lose limited liability

**[*11]** protection if "in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business." With regard to the meaning of "limited partner", the essential difference between ULPA (1916) and RULPA (1976) is that RULPA (1976) enumerates certain activities that a limited partner may perform without taking part in control of the business; for example, section 303(b)(5)(i) and (ii) of RULPA (1976) explicitly permits limited partners to vote on the dissolution of the partnership or the sale of substantially all of the partnership's assets.

In 1987 Mississippi adopted RULPA (1985) with some modifications. See 1987 Miss. Laws, ch. 488, sec. 303 (effective from Jan. 1, 1988); Miss. Code Ann. sec. 79-14-303 (2009). In terms almost identical to those of ULPA (1916) and RULPA (1976), the version of the limited partnership act that Mississippi adopted in 1987--and which was effective throughout the years at issue--provided that a "limited partner" would lose limited liability protection if "in addition to the exercise of his rights and powers as a limited partner, he participates in the control of the business." Miss. Code Ann. sec. 79-14-303. Like RULPA (1976), Mississippi's version provides safe harbors for various activities a limited partner may perform without losing limited liability protection. Id.

[*12] Common to each of the definitions of "limited partner" discussed above are the primary characteristics of limited liability and lack of control of the business. In this case, the respective interests in the PLLC held by Mr. Castigliola, Mr. Banahan, and Mr. Mullen made each a member of the PLLC, which was member-managed.[9] Therefore management power over the business of the PLLC was vested in each of them through the interest each held. See id. sec. 79-29-302 (effective after July 1, 1994). The PLLC had no written operating agreement, nor is there any evidence to show that any member's management power was limited in any way. Furthermore, all members participated in control of the PLLC: For example, they all participated in collectively making decisions regarding their distributive shares, borrowing money, hiring, firing, and rate of pay for employees. They each supervised associate attorneys and signed checks for the PLLC. On the basis of the foregoing facts, the respective interests held by Mr. Castigliola, Mr. Banahan, and Mr. Mullen could not have been limited partnership interests under any of the limited partnership acts. Therefore, they were not limited partners under section 1402(a)(13).

---

[9]There is no evidence to suggest that any member held a different type of interest in the PLLC or held more than one type of interest in the PLLC.

**[*13]** Moreover, a limited partnership must have at least one general partner. See, e.g., Miss. Code Ann. sec. 79-14-801 (2009) ("A limited partnership is dissolved and its affairs must be wound up upon the first of the following to occur: * * * (4) An event of withdrawal of a general partner unless at the time there is at least one other general partner[.]"). This is logical, because limited partners, as discussed above, cannot participate in control of the business and maintain their limited liability. Because there must be at least one partner who is in control of the business, there must be at least one general partner. The members testified that all members participated equally in all decisions and had substantially identical relationships with the PLLC. There was no PLLC operating agreement or other evidence to suggest otherwise. But since by necessity at least one of the members must have occupied a role analogous to that of a general partner in a limited partnership, and because all of the members had the same rights and responsibilities, they must all have had positions analogous to those of general partners in a limited partnership. This conclusion is affirmed by the history of the PLLC: Before the members organized the PLLC, they operated as a general partnership; and there is no evidence that organizing as a PLLC was accompanied by any change in the way they managed the business.

**[*14]**  Accordingly, Mr. Castigliola, Mr. Banahan, and Mr. Mullen may not

exclude any part of their distributive shares from self-employment income under

section 1402(a)(13).

II.    Unreported Income

Respondent argues that $15,167 of undistributed funds remaining in the

PLLC's trust account at the end of 2010 is income to the members for 2010 and

should have been reported on petitioners' joint income tax returns.

Mr. Banahan testified credibly that the funds in the trust account were not

PLLC funds and could not be withdrawn as fees by the members.  He was not sure

to which clients the funds belonged but was certain that it would be a violation of

professional ethics to withdraw the money as fees (the consequences of which

might have included disbarment).  He was not sure how the discrepancy arose but

stated that it may have been attributable to losing the PLLC's office in Hurricane

Katrina.  He also stated that at some point the money might be deposited into

Mississippi's fund for unclaimed moneys.  Mr. Banahan's testimony was

corroborated by the credible testimony of Mr. Castigliola.

The members testified credibly that the funds respondent identified do not

belong to the members.  Rule 1.15 of the Mississippi Rules of Professional

Conduct requires that a lawyer keep client funds--and funds the ownership of

**[\*15]** which is disputed--separate from the lawyer's own property. Petitioners argue that, because the members know they do not own these funds, the funds must be kept separate in the trust account. Respondent has offered no evidence or arguments to support his contention that the members are entitled to withdraw these funds as fees. The Court therefore finds that the funds in the trust account do not belong to them. Consequently, the funds remaining in the PLLC's trust account are not income to petitioners for 2010.

III.    Section 6662(a) Penalties

Section 6662(a) and (b)(1) and (2) imposes a penalty of 20% of the portion of an underpayment attributable to any one of various factors, including "negligence or disregard of rules or regulations" and "any substantial understatement of income tax". Respondent contends that petitioners are liable for accuracy-related penalties for the years at issue because they had underpayments due to substantial understatements of income tax or negligence. Under section 7491(c) the Commissioner bears the burden of production with regard to penalties. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). To meet that burden the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Id.

[*16] There is a substantial understatement of income tax for any taxable year if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000. Sec. 6662(d)(1)(A). Petitioners did not substantially understate their income tax for any year at issue.

The deficiencies determined by respondent were as follows:

| Petitioners | 2008 | 2009 | 2010 |
|---|---|---|---|
| Banahan | $9,196 | $8,477 | $6,418 |
| Castigliola | 8,278 | 5,566 | 4,013 |
| Mullen | 4,168 | 3,692 | 3,126 |

Respondent determined that the income tax required to be shown on the Banahans' and the Castigliolas' returns was as follows:

| Petitioners | 2008 | 2009 | 2010 |
|---|---|---|---|
| Banahan | $157,463 | $150,368 | $85,340 |
| Castigliola | 154,168 | 144,074 | N/A |

The Mullens had deficiencies that were less than $5,000 for every year, and the Castigliolas' deficiency was less than $5,000 for 2010. The deficiencies respondent calculated for the Banahans and the Castigliolas are less than 10% of the respective amounts respondent determined were required to be shown on the Banahans' and the Castigliolas' tax returns for 2008, 2009, and 2010. Therefore,

[*17] petitioners did not substantially understate their income tax for any year at issue, and respondent has not met his burden of production on this issue.

Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and "disregard of rules or regulations" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Negligence is determined by testing a taxpayer's conduct against that of a reasonable, prudent person. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), aff'g 79 T.C. 714 (1982).

A penalty will not be imposed under section 6662(a) if the taxpayer establishes that he acted with reasonable cause and in good faith. Sec. 6664(c)(1). Circumstances that indicate reasonable cause and good faith include reliance on the advice of a tax professional. Sec. 1.6664-4(b), Income Tax Regs.; see Higbee v. Commissioner, 116 T.C. at 449. For a taxpayer to rely reasonably upon advice so as to negate a section 6662(a) accuracy-related penalty determined by the Commissioner, the taxpayer must prove by a preponderance of the evidence that the taxpayer meets each requirement of the following three-prong test: (1) the adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's

[*18] judgment.  Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

All of these requirements are met.  Petitioners' CPA, who had over 40 years of experience and had served in positions on State and National boards of accountancy, was a competent professional who had sufficient expertise to justify reliance.  On the basis of the entire record, the Court is satisfied that petitioners' CPA was given all the necessary information to prepare their collective tax returns and that the information provided was accurate.  Furthermore, the CPA had prepared the law firm's tax returns for many years and so was intimately familiar with the business.  Finally, the testimony presented--which was all credible-- clearly showed that petitioners relied in good faith on the advice that the CPA had provided.  Therefore, petitioners reasonably relied on the advice of their CPA. Additionally, there were no regulations or administrative or judicial guidance to assist the members at the time:  "Limited partner" has never been defined by statute or regulation; Renkemeyer was a case of first impression on the issue, and it was decided in 2011--after the years at issue in this case.  Also, the members adopted a fairly conservative (though incorrect) reporting position:  They remitted self-employment taxes on the guaranteed payments they received, the amounts of the guaranteed payments were calculated on the basis of a survey of legal salaries

**[\*19]** in the area, and these guaranteed payment amounts were reasonable on the basis of the survey information.  For these reasons the Court concludes that petitioners acted with reasonable cause and in good faith.[10]

Therefore, petitioners are not liable for any penalties under section 6662(a) for the years at issue.  The Court has considered all of the arguments made by the parties, and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.

---

[10]Because of the Court's conclusion regarding the reasonable cause exception under sec. 6664(c), the Court does not reach the issue of whether petitioners were negligent under sec. 6662(b)(1).