T.C. Memo. 2017-239

UNITED STATES TAX COURT

CONSTANTINE GUS CRISTO, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2161-12.                          Filed November 29, 2017.

Constantine Gus Cristo, pro se.

Ann Louise Darnold, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, Judge:  With respect to petitioner's Federal income tax for 2002, the

Internal Revenue Service (IRS or respondent) determined a deficiency in tax of

$119,395 and a section 6662(a) accuracy-related penalty of $22,681.40.[1]  After

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

[*2] concessions, the issues for decision are whether petitioner is entitled to deduct for 2002: (1) travel expenses beyond those that respondent has allowed and (2) training expenses of $28,377.

FINDINGS OF FACT

The Court held a partial trial on May 14, 2013, and on September 2, 2016, the parties filed a motion to submit this case under Rule 122, reflecting their agreement that the relevant facts could be presented without further trial. The parties filed a stipulation of facts, a first supplemental stipulation of facts, a second supplemental stipulation of facts, a third supplemental stipulation of facts, and a fourth supplemental stipulation of facts. The parties also attached numerous exhibits to the stipulations. The stipulated facts and exhibits are incorporated by this reference.[2] When the petition was filed petitioner resided in California.

---

[1](...continued)
Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Respondent objected to the third and fourth supplemental stipulations of facts and the respective accompanying exhibits on the ground of relevancy. The Court accepted the stipulations, admitted the exhibits, and ordered the parties to brief the relevancy of those stipulations and exhibits. Respondent's objections are addressed infra notes 6 and 7.

In petitioner's brief, he objected to several of respondent's proposed findings of fact and proposed his own findings of fact that revised certain

(continued...)

[*3] Petitioner formed Desperado, LLC (Desperado), on January 8, 2002, with the purpose of producing movies. During 2002 petitioner was involved in securing financing for, producing, and engaging in the preliminary development of a film originally titled "Walking on Water". This film was finally released in 2007 under the title "The Deep Below".

During 2002 petitioner spent a substantial number of days traveling for Desperado's movie production business. Throughout the production of "Walking on Water", petitioner attempted to efficiently spend the limited capital. He avoided hotel expenses by staying with his ex-wife while working in Phoenix, Arizona, and Aspen, Colorado, and his aunt while working in Tulsa, Oklahoma, and in Dallas, Texas. Petitioner purchased groceries and housekeeping supplies in return for their hospitality.

Petitioner sought to involve his son, Alex, in Desperado's endeavors. Alex enjoyed making movies; his childhood work had shown promise in filmmaking. Petitioner asked Alex to take a number of film-related courses outside of those

[2](...continued)
stipulations in the stipulation of facts and the supplemental stipulation of facts. Petitioner stated that those stipulations were incomplete or inaccurate which he based upon his belief that his counsel was ineffective. Petitioner's proposed findings of fact fail to address substantiation issues over and above what respondent has conceded or what the Court has addressed in the balance of this opinion.

[*4] required by Alex's college for his bachelor's degree in English. Because Alex had no formal film training, the two agreed that these courses would further Alex's skills and would be useful for his involvement in "Walking on Water". Following his father's request, Alex took a total of 28 film-related credit hours over the course of his undergraduate education, including two 4-credit-hour courses in spring 2002--history and analysis of media arts II and concept development--and one 4-credit-hour course in fall 2002--introduction to media production.[3] Alex applied the skills and knowledge gained through his coursework to the preproduction activity of "Walking on Water" during 2002 and continued in that capacity through its production in 2003 and release in 2007.

Petitioner timely filed his 2002 Form 1040, U.S. Individual Income Tax Return. He prepared and timely filed on behalf of Desperado a 2002 Form 1065, U.S. Return of Partnership Income. Both forms were prepared using the cash basis method of accounting. Petitioner reported $300,000 of income, which he offset with $267,521 of deductions. These deductions were allocated across 26 categories of expenses. Schedules K-1, Partner's Share of Income, Deductions, Credits, etc., attached to Desperado's 2002 Form 1065 reflect that petitioner

---

[3]Although a divorce agreement required petitioner's ex-wife to bear all of the costs of Alex's education, petitioner paid for the spring 2002 and fall 2002 semesters of Alex's undergraduate education.

[*5] owned 95% of Desperado. Alex did not own the remaining 5% of Desperado during the year at issue.

Petitioner's return was selected for audit. After petitioner executed a series of Forms 872, Consent to Extend the Time to Assess Tax, on November 3, 2011, respondent issued petitioner a notice of deficiency for 2002 determining an income tax deficiency of $119,395 and a section 6662(a) accuracy-related penalty of $22,681.40. Petitioner timely filed his petition and selected Oklahoma City, Oklahoma, as the place of trial. Before trial he obtained pro bono counsel through the local low income taxpayer clinic.[4]

Petitioner and his counsel worked with respondent's counsel to provide substantiation of petitioner's expenses underlying his claimed deductions (and of expenses in addition to the amounts claimed on the original return). This outstanding effort resulted in a reduction of the deficiency from $119,395 to $29,871; the Government's full concession of the entire section 6662(a) penalty; and a concession that petitioner is entitled to a certain amount of interest abatement.[5] Following the withdrawal of his counsel, petitioner worked with

[4]For reasons irrelevant here, petitioner's counsel withdrew before the submission of this case under Rule 122.

[5]On February 29, 2016, the parties filed a supplemental stipulation of facts

(continued...)

**[\*6]** respondent's counsel and substantiated an additional $4,885.67 of expenses for 2002.

The Court held a partial trial on May 14, 2013.[6]  On September 2, 2016, the parties filed a motion to submit this case under Rule 122, stating that further trial was no longer necessary and that this case could be submitted on the pleadings and the stipulations of facts, exhibits, and testimony.  The Court granted that motion on September 27, 2016.

---

[5](...continued)
in which they stipulated that interest on any deficiency for the taxable year 2002 is suspended pursuant to sec. 6404(g) beginning on April 18, 2005, and ending on July 26, 2007.  But the parties did not stipulate that these dates are the only periods during which interest is suspended.  See Bokum v. Commissioner, 992 F.2d 1132, 1135-1136 (11th Cir. 1993), aff'g 94 T.C. 126 (1990); Bail Bonds by Marvin Nelson, Inc. v. Commissioner, 820 F.2d 1543, 1547 (9th Cir. 1987), aff'g T.C. Memo. 1986-23.  In deficiency proceedings the Court has no jurisdiction as to interest.  See sec. 7481(c); Bourekis v. Commissioner, 110 T.C. 20 (1998).

[6]During the pendency of this case petitioner thrice requested an offer-in-compromise from respondent.  Each offer was rejected.  Petitioner asks the Court to review respondent's evaluation and rejection of his offers-in-compromise.  But these offers are not relevant to the analysis of his proposed liability for 2002; the Court sustains respondent's objections with respect to the third and fourth supplemental stipulations of facts and the accompanying exhibits as they relate to petitioner's offers-in-compromise submitted after the filing of his petition.  Petitioner is not, however, precluded from submitting an offer-in-compromise after his 2002 deficiency is assessed.  After assessment, if there is a formal collection due process hearing and he receives a notice of determination, petitioner may petition this Court for review of that hearing and determination.  See sec. 6330(d).

**[\*7]**                                   OPINION

I.    Burden of Proof

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct. Welch v. Helvering, 290 U.S. 111, 115 (1933). In pertinent part, Rule 142(a)(1) provides the general rule that "[t]he burden of proof shall be upon the petitioner". The submission of this case under Rule 122 does not change or otherwise lessen petitioner's burden of proof. See Rule 122(b); Weaver v. Commissioner, 121 T.C. 273, 275 (2003). The taxpayer bears the burden of proving his entitlement to deductions allowed by the Code and of substantiating the amounts of claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs.

Under section 7491(a) if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the proper income tax liability, and if certain conditions are met, the burden of proof shifts to the Commissioner. See also Rule 142(a). With respect to the issues addressed below,[7] petitioner does

_____

[7]In his briefs, petitioner argues that the burden of proof should shift to respondent with respect to the question of whether petitioner's constitutional rights were violated before the notice of deficiency was issued. Generally, the Court will not look behind a notice of deficiency. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). Although unconstitutional conduct is an exception to the general rule that the Court will not look behind the notice of

<span style="float:right">(continued...)</span>

**[\*8]** not contend, and the evidence does not establish, that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.

II.     Schedule C Expenses

Section 162(a) allows a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  A necessary expense is one that is "appropriate and helpful" to the taxpayer's business; ordinary expenses are those that are common or frequent in the type of business in which the taxpayer is engaged.  Deputy v. du Pont, 308 U.S. 488, 495 (1940); Welch v. Helvering, 290 U.S. at 113.  Personal, living, and family expenses are generally not deductible.  Sec. 262.

---

[7](...continued)
deficiency, this Court has not declared a notice of deficiency void as a sanction for such conduct.  See Riland v. Commissioner, 79 T.C. 185, 207 (1982); Jackson v. Commissioner, 73 T.C. 394, 401 (1979); Greenberg's Express, Inc. v. Commissioner, 62 T.C. at 328; Human Eng'g Inst. v. Commissioner, 61 T.C. 61, 66 (1973); Suarez v. Commissioner, 58 T.C. 792, 814 (1972).  Respondent's objections are sustained with respect to the stipulations of facts and the accompanying exhibits that relate to petitioner's prenotice dealings with the IRS.

Petitioner's lengthy dealings with the IRS follow an unfortunate set of circumstances that occurred before the notice of deficiency.  Petitioner asks this Court to "initiate some separate action or referral that would result in the proper adjudication of that abuse" but points to no authority to support such a remedy. The Court will not look behind the notice of deficiency in this case, and the burden of proof remains on petitioner to establish a violation of his constitutional rights.

**[\*9]** Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that claimed expenses are ordinary and necessary. Rule 142(a). The taxpayer also bears the burden of substantiating the expenses underlying his claimed deductions by keeping and producing records sufficient to enable the Commissioner to determine the correct tax liability. Sec. 6001; INDOPCO, Inc. v. Commissioner, 503 U.S. at 84; sec. 1.6001-1(a), (e), Income Tax Regs. The failure to keep and present such records counts heavily against a taxpayer's attempted proof. Rogers v. Commissioner, T.C. Memo. 2014-141, at \*17.

Section 274(d) imposes more rigorous substantiation requirements for expenses pertaining to travel, business meals or entertainment, and listed property. Deductions for these expenses are disallowed unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement: (1) the amount of the expense; (2) the time and place of the travel, meal, entertainment, or use of the property; (3) the business purpose of the expense; and (4) in the case of meals and entertainment, the business relationship to the taxpayer of the persons entertained. See sec. 274(d).

There is no doubt that petitioner carried on business on behalf of Desperado and paid expenses pertaining to it in 2002.

**[\*10]** A.    Travel Expenses

During 2002 petitioner spent a substantial number of days traveling for Desperado's movie production business.  As a result he claimed a travel expense deduction of $17,172, comprising airfare of $5,640; lodging and meal expenses of $8,429; and automobile expenses of $3,103.[8]  Only certain lodging and meal expenses remain in issue.

Petitioner stayed with his ex-wife for 167 nights during 2002; he stayed with his aunt for 21 nights.  During these stays petitioner often purchased groceries and housekeeping supplies for his host, claiming that he spent $4,454.85 and that he should be allowed to deduct this amount in lieu of lodging.  Petitioner asks the Court to find that he is entitled to deduct this amount in addition to the lodging expenses respondent already allowed or conceded.[9]  He also argues that he should be entitled to a deduction for meals and incidental expenses of $8,342

---

[8]The stipulation of settled issues reflects respondent's concession of additional deductions for $1,376.44 in car rental expenses and an additional $6,387 of automobile-related expenses that petitioner did not originally claim.

[9]Petitioner's spreadsheet applies "per diem" rates of $24.57, $17.09, and $14.68, depending upon the city in which he was staying.  His brief applies a consistent rate of $25.94 without any explanation.  He argues that he substantiated this amount through Desperado's credit card statements, but no such evidence was submitted to this Court.

**[*11]** using the Federal meals and incidental expenses (M&IE) rates in IRS Publication 1542.[10]

Notwithstanding the absence of receipts for the groceries and housekeeping supplies, petitioner's relationships with his hosts, and his admitted consumption of some of the groceries, respondent conceded that petitioner should be entitled to deduct 50% of that amount, or $2,227.43, as a lodging expense. Because petitioner has not substantiated any amount of expenses for these groceries and housekeeping supplies, he is not entitled to any lodging deduction in excess of the amounts respondent allowed or conceded.

With respect to the amount of expenses petitioner is permitted to deduct for 2002, he requests that the Court find that he is entitled to the appropriate amount allowed under the Federal M&IE schedule. Petitioner did not keep many receipts or records for his meal expenses incurred while traveling in 2002. But because the Court denied petitioner's request to be relieved of the stipulation of facts, the supplemental stipulation of facts, and the accompanying exhibits, respondent is bound by the stipulation that petitioner made the trips as listed in his spreadsheet

---

[10]Although parties may not raise an issue for the first time on brief if the Court's consideration of the issue would surprise and prejudice the opposing party, see Smalley v. Commissioner, 116 T.C. 450, 456 (2001), respondent was not prejudiced in this instance by petitioner's request to be allowed to deduct the Federal per diem amount for his meals and incidental expenses.

[*12] and that on those trips he conducted business on behalf of Desperado. See Rev. Proc. 2001-47, sec. 4.03, 2001-2 C.B. 332, 334 (providing that the Federal M&IE rate is deemed substantiated for purposes of the revenue procedure and for purposes of section 1.274-5(c), Income Tax Regs., if the self-employed individual substantiates the elements of time, place, and business purpose).

Petitioner may therefore deduct an amount based upon the Federal M&IE rate for the localities in his spreadsheet rather than his actual expenses paid.[11] See Rev. Proc. 2001-47, secs. 4.03, 7.07, 2001-2 C.B. 334, 339. Because petitioner was the managing member of Desperado, he is considered self-employed rather than an employee. Cf. Castigliola v. Commissioner, T.C. Memo. 2017-62, at *7-*14. This amount is properly deducted from petitioner's gross income under section 62(a)(1). Since petitioner did not keep records of the portion he consumed of the groceries purchased for his hosts--and to prevent the inadvertent duplication of these costs for days for which he is entitled to deduct an amount using the Federal per diem rate--the sum of the respective Federal per diem amounts shall be

---

[11]Because the Court finds petitioner is entitled to use the Federal per diem rates in lieu of amounts actually substantiated, he is not entitled to deduct any meal-related amounts that respondent conceded, i.e., the $20.86 in "other meals" and the $214 he spent for a shared meal with his attorney and his attorney's wife. And without any evidence with which the Court could properly allocate the $2,414 in "meal and entertainment expenses" between the categories, petitioner is not entitled to deduct this amount either.

**[\*13]** reduced by the $2,227.43 respondent conceded as a lodging expense. That total is reduced by 50% under section 274(n).

B.    Training Expenses

Petitioner deducted $28,377 as a training expense; this amount, he argues, is the amount he paid for Alex's undergraduate courses taken in 2002. Petitioner paid $14,752 on December 31, 2001, for the spring 2002 semester and $10,797 on September 3, 2002, for the fall semester. Petitioner claims that the $2,828 difference between the sum of the tuition payments and the amount claimed as a deduction was a payment to his ex-wife for some of Alex's college expenses.[12]

Petitioner's son showed promise in filmmaking from a young age. Because of Alex's self-developed skills and potential, petitioner asked him to take film-related courses outside of his required curriculum that would further develop these skills and talents. Petitioner testified that he wanted his son to have "a technical basis so that he would be a film maker" that he could trust. Alex helped his father during the summer of 2002, applying the skills and knowledge gained through his two film courses to the preproduction activity of "Walking on Water" during 2002. He continued taking film courses, ultimately taking five others.

---

[12]Because the Court finds that petitioner is not entitled to deduct the education-related expenses he paid on behalf of his son, his payment of the $2,828 vel non is irrelevant.

**[*14]** Alex was not an employee or owner of petitioner's film production company; he was a student whose father was starting a film production company and wanted it to be a family endeavor. Petitioner paid Alex's tuition on December 31, 2001, for the spring 2002 semester; Desperado was not formed as an entity until January 8, 2002. Therefore, Alex could not have been an employee of Desperado when the tuition was paid in 2001. Although petitioner paid Alex's tuition for the fall 2002 semester after Alex had worked on the preproduction activity of "Walking on Water", the Court cannot find that two introductory film courses transformed Alex's promise in filmmaking into an established trade or business. Petitioner's payment of the tuition for these semesters was a kind gesture to his son and relieved his ex-wife of her tuition responsibilities under the divorce decree. It was not a deductible business expense.

The Court finds that petitioner is not entitled to a deduction related to the educational expenses of his son. Respondent's disallowance of this deduction is sustained.

To reflect the foregoing and the parties' concessions,

Decision will be entered

under Rule 155.
