# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 16, 2026

Lyle W. Cayce
Clerk

No. 24-60240

Sirius Solutions, L.L.L.P.; Sirius Solutions GP, L.L.C.; Tax Matters Partner,

*Petitioners—Appellants*,

*versus*

Commissioner of Internal Revenue,

*Respondent—Appellee*.

Appeal from the United States Tax Court
Agency Nos. 11587-20, 30118-21

Before Graves, Engelhardt, and Oldham, *Circuit Judges*.
Andrew S. Oldham, *Circuit Judge*:

This case turns on the meaning of "limited partner" in 26 U.S.C. § 1402(a)(13). The Tax Court interpreted "limited partner" to refer only to passive investors in a limited partnership. It therefore upheld the IRS's upward adjustment of Sirius Solutions's net earnings from self-employment. We disagree. A "limited partner" is a partner in a limited partnership that has limited liability. So we vacate and remand.

I

A

The Internal Revenue Code imposes a Social Security and Medicare tax based on every individual's earnings. Social Security Administration, Understanding the Benefits 3 (2025). This applies to the income of those who are employed by another, *see* 26 U.S.C. § 3101, as well as "the self-employment income of every individual," *id.* § 1401(a). This case concerns the self-employment tax liability of limited partners.

The term "self-employment income" is defined as "the net earnings from self-employment derived by an individual . . . during any taxable year." *Id.* § 1402(b). And "net earnings from self-employment" includes, as relevant here, an individual's "distributive share (whether or not distributed) of income or loss described in section 702(a)(8) from any trade or business carried on by a partnership of which he is a member." *Id.* § 1402(a).

This case turns on an exception "in computing . . . such distributive share" for limited partners. *Ibid.* The Code provides:

> [T]here shall be excluded the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in section 707(c) to that partner for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration for those services.

*Id.* § 1402(a)(13). And § 707(c) states that "payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership." So, putting these provisions together, a limited partner's pass-through share of partnership income (or loss) is exempt from the Social Security and Medicare tax imposed in § 1401. This tax exception for limited partners has remained unchanged since its adoption as part of the

2

Social Security Amendments of 1977. *See* An Act to Amend the Social Security Act and the Internal Revenue Code of 1954 to Strengthen the Financing of the Social Security System, and for Other Purposes, Pub. L. No. 95-216, § 313(b), 91 Stat. 1509, 1536.

That same statute also adopted an identical Social Security *benefits* exception for limited partners. *See id.* at § 313(a), 91 Stat. at 1535. This is not surprising. The amount of Social Security benefits received, just like the amount of Social Security tax paid, depends on the taxpayer's self-employment income. *See* 42 U.S.C. § 415. That creates a congruence between the taxes an individual pays and the benefits he is eligible to receive.

So, to review, the pass-through share of partnership income (or loss) of a limited partner is not subject to Social Security and Medicare taxation; but neither does it count toward the Social Security benefits the person may receive later in life.

B

Sirius Solutions, L.L.L.P. ("Sirius") is a limited liability limited partnership formed under Delaware state law. It operates a business-consulting firm based in Houston, Texas, with additional offices in Dallas, Texas, and London, England. Sirius Solutions GP, L.L.C. ("Sirius GP"), also formed under Delaware law, is the tax matters partner ("TMP") of Sirius. *See* 26 U.S.C. § 6231(a)(7) (defining tax matters partner).

This appeal concerns Sirius's federal tax returns from 2014, 2015, and 2016. In 2014, Sirius was owned by nine limited partners and one general partner, Sirius GP. Sirius GP held a .6457% interest in the partnership. Four limited partners sold their partnership interests in 2014, so in 2015 and 2016, there were five limited partners alongside Sirius GP, the general partner. During those latter two years, Sirius GP held a .7529% interest in the partnership.

No. 24-60240

Sirius reported ordinary business income of $5,829,402 in 2014, $7,242,984 in 2015, and –$490,291 in 2016. Sirius allocated all that income to its limited partners. Based on the limited partnership tax exception, Sirius excluded the limited partners's distributive shares of partnership income (or loss) from its calculation of net earnings from self-employment during those years. So it reported $0 of net earnings from self-employment.

Thereafter, the Internal Revenue Service ("IRS") audited Sirius's 2014 tax returns. In June 2020, the Commissioner of Internal Revenue issued to Sirius GP a Notice of Final Partnership Administrative Adjustment ("FPAA") concerning the 2014 return. The IRS determined that the distributive share exception in § 1402(a)(13) did not apply because none of Sirius's limited partners counted as "limited partners" for purposes of the statutory exception. So the IRS adjusted Sirius's net earnings from self-employment reported on the 2014 tax return from $0 to $5,915,918. In September 2020, Sirius petitioned the Tax Court for readjustment of its 2014 tax return.

The IRS also audited Sirius's 2015 and 2016 tax returns. In June 2021, the IRS issued more FPAAs to Sirius GP. These adjusted the net earnings from self-employment from $0 to $7,372,756 and –$490,291 respectively. In September 2021, Sirius filed a second petition to the Tax Court seeking readjustment for the 2015 and 2016 tax returns. The two cases were consolidated.

On February 20, 2024, the Tax Court rejected Sirius's challenges and upheld the adjustments. It reasoned that it was bound by a recent Tax Court decision, *Soroban Capital Partners LP v. Commissioner*, 161 T.C. 310 (2023). In that decision, the Tax Court held that for purposes of the § 1402(a)(13) exception, the term "limited partners" only "refer[s] to passive investors." *Soroban*, 161 T.C. at 320. Sirius timely appealed to this court.

No. 24-60240

## II

The sole issue on appeal is the meaning of "limited partner" in § 1402(a)(13). We hold that a "limited partner" is a partner in a limited partnership that has limited liability. This is confirmed by (A) the text, and (B) the Social Security Administration ("SSA") and IRS's contemporaneous and longstanding interpretation of the term.

## A

As always, we begin with the text. *Seville Indus., LLC v. SBA*, 144 F.4th 740, 745 (5th Cir. 2025). The language in the Tax Code, "just as in any statute, is to be given its ordinary meaning" at the time of enactment. *Helvering v. William Flaccus Oak Leather Co.*, 313 U.S. 247, 249 (1941). "[W]e routinely consult dictionaries as a principal source of ordinary meaning . . . ." *Belt v. EmCare, Inc.*, 444 F.3d 403, 412 (5th Cir. 2006); *see also, e.g.*, *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 277–78 (2018) (turning first to contemporaneous dictionary definitions to discover a term's ordinary meaning).

Dictionaries at the time of § 1402(a)(13)'s enactment defined "limited partner" as a partner in a limited partnership that has limited liability.[1] For example, in 1971 and 1981, Webster's Third New International Dictionary defined "limited partner" as "a partner whose liability to creditors of the partnership is usu[ally] limited to the amount of capital he has contributed to the partnership providing he has not held himself out to the public as a general partner and has complied with other requirements of law." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1313 (1971); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1313 (1981) [hereinafter

─────────────────────

[1] Although we refer only to membership in a limited partnership throughout this opinion, we do not discuss whether members of another entity, such as an LLP or LLC, may also qualify for the limited partner exception.

No. 24-60240

Webster's Third 1981]. In contrast, the same dictionary defined a "general partner," as one "whose liability for partnership debts and obligations is unlimited." Webster's Third 1981, *supra*, at 945. In 1977, when the Social Security Amendments were passed, one legal dictionary defined "limited partnership" as a business "in which one or more of the partners are, on compliance with the provisions of various state statutes regulating such partnerships, relieved from liability beyond the amount of the capital contributed by them." William Cox Cochran, The Law Dictionary 184 (Wesley Gilmer, Jr. ed., 5th ed. 1977). Thus, the "limited partners, as such, are not bound by the obligations of the partnership." ROA.968.

Other dictionaries around the time of enactment confirm that the key feature of a "limited partner" is limited liability. Two legal dictionaries so defined the term in the years preceding the statute's enactment. *See, e.g.*, Walter A. Shumaker & George Foster Longsdorf, The Cyclopedic Law Dictionary 670 (Frank D. Moore ed., 3d ed. 1940) (defining "limited partnership" as "[o]ne wherein the liability of one or more of the members is, by compliance with certain statutory provisions, limited to the amount of their contribution to the capital stock"); *ibid.* ("The limited partners as such shall not be bound by the obligations of the partnership."); William C. Anderson, A Dictionary of Law 750 (1913) (defining "limited partnership" as an "association organized under a statute, with limited liability in some or all of the members"). Similarly, Black's Law Dictionary's 1968 edition defined "special partner," a synonym at the time for "limited partner," as a "member of a limited partnership, who furnishes certain funds to the common stock, and whose liability extends no further than the fund furnished" or "[a] partner whose responsibility is restricted to the amount of his investment." *Special Partner*, Black's Law Dictionary (Revised 4th ed. 1968). And the 1979 edition defined "limited partner" as a "partner whose liability to third party creditors of the partnership is limited

6

to the amount invested by such partner in the partnership." *Limited Partner*, BLACK'S LAW DICTIONARY (5th ed. 1979).[2]

Each contemporaneous dictionary has one and only one characteristic in common: limited liability. The touchstone of a "limited partner" in 1977 was limited liability.

B

Contemporaneous, longstanding, and consistent interpretation by two agencies confirms that a "limited partner" is a partner with limited liability in a limited partnership.

Courts "must exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). But agency interpretations are "especially useful in determining the statute's meaning" if those interpretations are "issued contemporaneously with the statute at issue, and . . . have remained consistent over time." *Ibid.* So when "the government has repeatedly issued guidance to the public at odds with the interpretation it now asks us to adopt," we should doubt "whether its current position represents the best view of the law." *Bittner v. United States*, 598 U.S. 85, 97 (2023); *see also id.* at 97 n.5.

---

[2] True, *Black's* 1968 and 1979 editions also include a definition of "limited partnership" that seems to indicate that limited partners are limited in the amount of partnership business they can conduct. *See Limited Partnership*, BLACK'S LAW DICTIONARY (Revised 4th ed. 1968); *Limited Partnership*, BLACK'S LAW DICTIONARY (5th ed. 1979). But that does not negate the fact that both dictionaries define the relevant term here—"limited partner," or its synonym—based solely on limited liability. Moreover, the 1979 edition's *first* definition of "limited partnership" only declares that "limited partners, as such, are not bound by the obligations of the partnership." *Limited Partnership*, BLACK'S LAW DICTIONARY (5th ed. 1979). So the alternative definitions that suggest a lack of participation in partnership affairs are in the minority, and thus they do not upset the common understanding of the term "limited partner" at the time of the statute's enactment.

No. 24-60240

Here, both the SSA and the IRS have issued contemporaneous and consistent interpretations of "limited partner" in the Social Security Amendments of 1977.

1

Start with the IRS. In 1978, the first year in which the "limited partner" exception could be implemented, the IRS issued partnership tax return instructions that defined "Limited Partner" as "one whose potential personal liability for partnership debts is limited to the amount of money or other property that the partner contributed or is required to contribute to the partnership." Internal Revenue Service, Package X: Informational Copies of Federal Income Tax Forms 137 (1978) [hereinafter 1978 Tax Instructions]. This definition was nothing new. It closely tracked the IRS's definition of "limited partner" in its instructions for the preceding two years. *See* Internal Revenue Service, Instructions for Form 1065, at 30 (1976); Internal Revenue Service, Instructions for Form 1065, at 149 (1977).

The IRS's interpretation of "limited partner" in its yearly instructions remained constant for well over the next 40 years. In fact, the IRS partnership instructions for Form 1065 for the 2014 to 2016 tax years—the years at issue here—likewise defined "limited partner" as "a partner in a partnership formed under a state limited partnership law, whose personal liability for partnership debts is limited to the amount of money or other property that the partner contributed or is required to contribute to the partnership." Internal Revenue Service, Instructions for Form 1065, at 2 (2015) [hereinafter 2014 Tax Instructions]; Internal Revenue Service, Instructions for Form 1065, at 2 (2016) [hereinafter 2015 Tax Instructions]; Internal Revenue Service,

No. 24-60240

Instructions for Form 1065, at 2 (2017) [hereinafter 2016 Tax Instructions].

Moreover, for well over 40 years, the IRS's instructions made clear that the term "limited partner" in § 1402(a)(13) did not have some hidden, narrower meaning from the rest of the Tax Code. In the 1978 partnership tax instructions, the IRS included a proviso concerning § 1402(a)(13). Therein, it used the term "limited partner," without providing a different definition. *See* 1978 Tax Instructions, *supra*, at 145. As such, the definition it offered at the beginning of the tax instructions obviously governed. What's more, the instructions declared that "[l]imited partners may treat as self-employment income *only* guaranteed payments for personal services actually rendered to the partnership." *Ibid.* (emphasis added). Otherwise, a partner in a limited partnership with limited liability could exclude its distributive share of partnership income (or loss). Thus, no "passive investor" definition of limited partner—or any other definition—was even hinted at in 1978. And the same was true in the IRS's tax forms for the next 40 years. *See, e.g.*, 2014 Tax Instructions, *supra*, at 35 ("Limited partners treat as self-employment earnings *only* guaranteed payments for services they actually rendered to, or on behalf of, the partnership." (emphasis added)); 2015 Tax Instructions, *supra*, at 35 (same); 2016 Tax Instructions, *supra*, at 34 (same); Internal Revenue Service, 2014 Instructions for Schedule SE (Form 1040), at 4 (similar); Internal Revenue Service, 2015 Instructions for Schedule SE (Form 1040), at 4 (similar); Internal Revenue Service, 2016 Instructions for Schedule SE (Form 1040), at 4 (similar).

It was not until January 7, 2022—over 45 years after its first interpretation—that the IRS issued partnership tax instructions *suggesting* a different view. And even then, these instructions *never* contradicted the IRS's earlier definition. After defining "limited partner" in the same way the instructions

did in the past, the instructions added a vague possible caveat: "However, whether a partner qualifies as a limited partner for purposes of self-employment tax depends upon whether the partner meets the definition of a limited partner under section 1402(a)(13)." Internal Revenue Service, Instructions for Form 1065, at 3, 39 (2022) (for tax year 2021). But no contrary interpretation of "limited partner"—supposedly just for that one particular provision—was anywhere offered.

From 1976 to 2022, the IRS issued instructions interpreting "limited partner" as a partner with limited liability in a limited partnership. That is "especially useful" in determining the meaning of the phrase "limited partner." *Loper Bright*, 603 U.S. at 394; *accord Bittner*, 598 U.S. at 97 & n.5.[3] All the more so here, as the IRS's instructions "explain the requirements of the Internal Revenue Code" to the public and "help taxpayers comply with the law." 26 C.F.R. § 601.602(a); *see also, e.g.*, *Snyder v. United States*, 603 U.S. 1, 10 (2024) (interpreting a statute in light of "fair notice" concerns).

2

The SSA's contemporaneous and longstanding interpretation of "limited partner" in the Social Security Amendments of 1977 matches the one provided by the IRS.

---

[3] The dissent questions how instructions on a tax form can count as agency interpretation. *See post*, at 43. The logic seems to be that *Loper Bright* applies only to agency interpretation, and instructions are somehow not interpretation. *See ibid.* With respect, it is difficult to see how the instructions are not the agency's interpretation. The IRS reviews its statutory mandate; creates instructions in light of those goals; publishes them; and then holds taxpayers to account if the taxpayers fail to follow them. Thus, the instructions appear to be textbook agency interpretations. The lawbooks teem with examples of taxpayers who've learned the hard way what happens when they ignore IRS instructions. So it is unclear how or why we should ignore them.

No. 24-60240

The SSA's interpretation of "limited partner" is quite relevant here. As explained above, the limited partner tax exception was enacted as part of the Social Security Amendments of 1977. Specifically, it was found at § 313(b). But § 313(a) adopted a virtually identical exception for Social Security benefits. Because "identical words used in different parts of the same act are intended to have the same meaning," we should interpret "limited partner" in § 313(a) and (b) in the same way. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 571 (2012) (quotation omitted). Moreover, this "maxim" is "doubly appropriate" here because the term is used "in the same section of the same public law." *Monsalvo Velázquez v. Bondi*, 604 U.S. 712, 726 (2025) (citation modified). And perhaps it is triply apt here: Both Social Security taxes and benefits depend on an individual's net earnings from self-employment, so such earnings should be calculated in the exact same way. Thus, the SSA's interpretation of "limited partner" in § 313(a) should be given "due respect" in interpreting that same term in the Tax Code. *Loper Bright*, 603 U.S. at 403.

In 1979, just two years after the limited partner exception was adopted, the SSA proposed a rule concerning that exception. One year later, that proposed rule became final. And it is still in effect today. The rule plainly states: "You are a 'limited partner' if your financial liability for the obligations of the partnership is limited to the amount of your financial investment in the partnership." Federal Old-Age, Survivors, and Disability Insurance; Employment, Wages, Self-Employment, and Self-Employment Income, 45 Fed. Reg. 20074, 20090 (Mar. 27, 1980) (codified at 20 C.F.R. § 404.1080(b)(3)). Once again, the touchstone of a "limited partner" was limited liability.

True, the rule went on to say that "[g]enerally, you will not *have to* perform services." *Ibid.* (emphasis added). But that statement does not say that such partners cannot or generally do not perform services for the

11

partnership. Instead, it indicates that there is no requirement that one must perform services for the partnership to be a "limited partner." So this statement neither changes the SSA's liability-focused interpretation of "limited partner," nor supports the alternative passive-investor interpretation.

SSA regulations issued shortly after the relevant statute that remain in effect today interpreted "limited partner" as a partner with limited liability in a limited partnership. This, too, is "especially useful" in interpreting "limited partner." *Loper Bright*, 603 U.S. at 394.

*

Dictionary definitions and the longstanding views of the two agencies tasked with administering the Social Security Amendments of 1977 all point in one direction. The term's "single, best meaning," *id.* at 400, is a partner in a limited partnership that has limited liability.

## III

The Tax Court, the IRS, and the dissent each offer several counterarguments. They all fail.

## A

First, both the Tax Court and the IRS offer a different interpretation of "limited partner." They say a limited partner is a mere "passive investor[]" in a limited partnership. *Soroban*, 161 T.C. at 320. But that interpretation fails for three reasons.

First, the passive-investor interpretation makes little sense of the "guaranteed payments" clause. All of a limited partner's distributive share of partnership income (or loss) is excluded from taxation, "other than guaranteed payments described in section 707(c) to that partner for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration for those

services." 26 U.S.C. § 1402(a)(13). The text of the exception itself contemplates that "limited partners" would provide actual services to the partnership and thus participate in partnership affairs. So a strict passive-investor interpretation that defines "limited partner" in a way that prohibits him from providing any services to the partnership would make the "guaranteed payments" clause entirely superfluous. The IRS tries to avoid that result by arguing that some participation is permissible, but just not too much—as determined by it. Perhaps that avoids making the "guaranteed payments" clause entirely superfluous. But it would be passing strange for Congress to go out of its way to include a long "guaranteed payments" clause that cross-references another provision just to ensure that exceedingly small sums of money will be taxed. The "guaranteed payments" clause, therefore, undermines the passive-investor interpretation and accords with the limited-liability interpretation.

Second, if Congress wished to only exclude passive investors from the tax, it could have easily written the exception to do so. For example, it could have used the term "passive investor," or some other similar term, as it has done in other provisions of the Tax Code. *See, e.g.*, Act of Apr. 14, 1966, Pub. L. No. 89-389, § 3(a), 80 Stat. 111, 115 (codified at 26 U.S.C. § 1372(e)(5) (1966) ("passive investment income"); *id.* Tax Reform Act of 1969, Pub. L. No. 91-172, ch. 42, § 4943(d)(4), 83 Stat. 487, 511 (codified at 26 U.S.C. § 4943(d)(4) (1969)) ("passive sources"); Subchapter S Revision Act of 1982, Pub. L. No. 97-354, 96 Stat. 1669 (referring to "passive investment income" or "passive income" 27 times across several provisions); Deficit Reduction Act of 1984, Pub. L. No. 98-369, 98 Stat. 494 (referring to "passive investment income," "passive income," and "passive assets"). Or Congress could have stated that a limited partner did not qualify for the exception if it provided services to or on behalf of the partnership—something Congress did (just three paragraphs away) in § 1402(a)(10). *See* 26 U.S.C.

§ 1402(a)(10) (excluding a partner's distributive share from the self-employment tax if he, *inter alia*, "rendered no services with respect to any trade or business carried on by such partnership (or its successors) during the taxable year of such partnership (or its successors)"); *cf.* 42 U.S.C. § 411(a)(9) (same exclusion for Social Security benefits). But Congress did not do so in § 1402(a)(13).

Third, consider the consequences of the IRS's passive-investor interpretation. For over 40 years, it was easy for a limited partner in a state-law limited partnership to discern his tax liability and plan his affairs accordingly. But under the IRS's new position, which requires the IRS to balance an infinite number of factors in performing its "functional analysis test," *Soroban*, 161 T.C. at 319, how are thousands of limited partners across the country to determine ex ante what their tax liability will be? The short answer: Only with the help of an army of lawyers and accountants—and a whole lot of luck.

The passive-investor interpretation is wrong.[4]

## B

The Tax Court raised a single textual argument in *Soroban*, the recent case that bound the Tax Court below. The exception set forth in § 1402(a)(13) refers not just to a limited partner, but to a "limited partner, as such." So, the Tax Court concluded, "[b]y adding 'as such,' Congress made clear that the limited partner exception applies only to a limited partner who is functioning as a limited partner." *Soroban*, 161 T.C. at 320. It thus concluded that the exception must apply only to a subset of limited partners, not

_____

[4] It is therefore irrelevant that the Tax Court has several pre-*Soroban* decisions adopting *Soroban*'s reading of the phrase limited partner. *Post*, at 29–32. As we have explained, *Soroban* was contrary to the Tax Code's plain text. Prior opinions putting forward the same erroneous reading of the phrase "limited partner" cannot overcome the Code's text.

all limited partners, otherwise the words "as such" would be meaningless. *Ibid.* And finally, it assumed that to function as a limited partner means to act as passive investor. *Ibid.*

Perhaps recognizing the weakness of this argument, the IRS does not even raise this argument on appeal.[5] And for good reason. It fails.

The Tax Court's first premise is correct. The word "such" is a "relative word, referring to the last antecedent." *Such*, BLACK'S LAW DICTIONARY (5th ed. 1979); *accord* BRYAN A. GARNER, GARNER'S MODERN ENGLISH USAGE 873 (4th ed. 2016). So the statute simply says, "limited partner, as a limited partner." Put differently, it means a limited partner functioning as a limited partner, or a limited partner in the capacity of a limited partner.

But the Tax Court's conclusions do not follow. "As such" does not restrict or narrow the class of limited partners, nor does it upset the term's ordinary meaning. How could it? "A limited partner, as a limited partner" is merely recursive. So for the Tax Court's conclusion to follow, a limited partner must be defined as a passive investor, which we have already established is not true.

Moreover, the Tax Court was mistaken to assume that the phrase "as such" was without meaning unless it somehow severely restricted the scope of the term "limited partner." People—including limited partners—can have multiple functions or capacities. At the time the statute was enacted, just as today, an individual could serve as both a limited partner and a general

---

[5] Contrary to the dissent's characterization, we recognize that the IRS makes arguments about the statutory text. *Post*, at 36. On appeal, the agency appears to recharacterize its arguments as speaking to the "[f]undamental principles of federal taxation," and the "ordinary meaning of 'limited partner'" rather than strict reliance on the words "as such." Red Br. at 24; 36.

partner. *See, e.g.*, Revised Unif. Ltd. P'Ship Act § 303(a) (1976); Del. Code Ann tit. 6, § 17-404. The phrase "as such," therefore, is quite meaningful because it clarifies how individuals who serve as both a limited and general partner are to be taxed. Without the qualification, a dual-status partner might think his entire distributive share is not subject to taxation. So the words "as such" avoid ambiguity by clarifying that when functioning as a limited partner, a taxpayer's distributive share of partnership income (or loss) is excluded from net earnings from self-employment. But when functioning as a general partner, his distributive share is included in net earnings from self-employment.[6]

The phrase "as such," therefore, does not undermine the ordinary meaning of "limited partner."

## C

The IRS argues that fundamental tax principles undermine our interpretation and bolster its newly adopted one. It alleges three specific principles are inconsistent with our position: Federal law, not state law, controls the interpretation of federal tax statutes. Federal tax law is concerned with economic reality, not labels. And federal tax law should be uniform nationwide.

But our position does not run afoul of these principles. We have no doubt that the meaning of "limited partner" in a federal tax statute "is ultimately a question of federal law." *United States v. Craft*, 535 U.S. 274, 278 (2002). We agree that we must apply the ordinary meaning of that term at the time of enactment. "The answer to this federal question, however, largely depends upon state law." *Ibid.* That is because limited partnerships are creatures of state law, not federal law. So "state law creates legal

---

[6] This argument solely based on the text is consistent with one House Report. *See* H.R. Rep. No. 95-702, pt. 1, at 40 (1977).

interests," such as membership in a state-created entity like a limited partnership and limited liability, "but the federal statute determines when and how they shall be taxed." *Burnet v. Harmel*, 287 U.S. 103, 110 (1932); *see also, e.g.*, *Morgan v. Comm'r*, 309 U.S. 78, 80–81 (1940) ("State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed."). Put differently, there is a federal definition of "limited partner" in § 1402(a)(13): a partner in a limited partnership that has limited liability. But because the creation of a limited partnership and the grant of limited liability are matters of state law, we must look to state law to determine if those preconditions of the federal statutory definition are satisfied. And if they are, federal law exempts such individuals from a federal tax.

Similarly, it should be apparent that our interpretation of "limited partner" does not turn on state *labels*. One is not a "limited partner" under § 1402(a)(13) simply because a particular State calls him such. For example, if the hypothetical State of West Carolina labeled someone a "limited partner" under state law even though they were a sole proprietor, such an individual would not be considered a "limited partner" for purposes of § 1402(a)(13). Alternatively, if the hypothetical State of East Carolina only labeled someone a "schlimited bartner" under state law, even though they were a member of a limited partnership and had limited liability, such individuals would still qualify for the § 1402(a)(13) exception. Rather than looking to state labels, federal law looks to the substantive "interests" that state law creates, *Burnet*, 287 U.S. at 110, such as whether a person has the rights and duties associated with a limited partnership or whether that individual has limited liability. "If it is found in a given case that [this] interest or right created by local law" is present, "the federal law must prevail no matter what name is given to the interest or right by state law." *Morgan*, 309 U.S. at 81. If

it is not present, the individual is not a "limited partner" under § 1402(a)(13).

Relatedly, there is no serious risk of disuniformity in tax law based on our interpretation. To begin, because the federal exception is explicitly tethered to state interests and rights, if there are any differences among the States in creating these interests and rights, there is no lack of uniformity in the federal *law*—it remains the same across the country. Regardless, most States have adopted uniform limited partnership acts today, so there is very little risk of a patchwork of entirely different rules spanning the Nation. And in any event, the IRS's new interpretation would likely lead to even more disuniformity. Under its interpretation, there would likely be a great deal of litigation about how much participation in the partnership is too much. And it might result in disagreement among the courts, thereby creating disuniformity.

The IRS's tax principles are correct. But our interpretation is entirely consistent with them.

## D

The IRS next argues that the history of limited partnership law establishes that the limited partner exception only reaches passive investors. We disagree.

That is for several reasons. As we already explained, the agencies administering this provision and numerous dictionaries, including legal dictionaries, defined "limited partner" by reference to the partner's limited liability protection. Moreover, state law on limited partnerships was in constant flux throughout the twentieth century. The only clear rule derivable from that ever-changing patchwork is the one we have applied: a limited partner had limited liability. In addition, even though many States and the Revised Uniform Limited Partnership Act of 1976 set some (albeit different) limits on the

ability of limited partners to participate in the control of the limited partnership, that does not change the core of what it *means* to be a limited partner. Such restrictions on or regulations of limited partners do not affect their status as limited partners.

E

The IRS, the Tax Court, and the dissent all rely on legislative history. But the legislative history does not help their arguments here.

First, legislative history is "generally of dubious value in statutory interpretation." *Deanda v. Becerra*, 96 F.4th 750, 763 (5th Cir. 2024); *see also id.* at 763 n.12 (listing sources). Second, "[w]here, as here," textual arguments "yield[] a clear answer, judges must stop." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019).

But, even if we were to probe the legislative history, we would be looking in vain for evidence supporting the government or dissent's view. The best evidence offered by the government (and the dissent) is a House Report. *See* H.R. Rep. No. 95-702, pt. 1, at 40–41 (1977). That document says that a particular committee was "concerned about situations in which certain business organizations solicit investments in limited partnerships as a means for an investor to become insured for social security benefits." *Ibid.* And it asserts that the "distributive share of income or loss received by a limited partner from the trade or business of a limited partnership would be excluded from social security coverage." *Id.* at 40. It goes on to state that "the exclusion from coverage would not extend to guaranteed payments (as described in section 707(c) of the Internal Revenue Code), such as salary and professional fees, received for services actually performed by the limited partner for the partnership." *Ibid.*

To the government and the dissent, this language demonstrates two things. First, they say it shows Congress sought to "fix" a loophole that let

investors game the Social Security system. And second, they say that the report demonstrates the phrase "limited partner, as such" means only "a limited partner who is functioning as a limited partner, i.e., a passive investor versus a limited partner in name only." *Post*, at 32–33.

As to the first issue, the House Report says nothing about *how* Congress sought to fix the perceived issue. So the legislative history is at most ambiguous. Obviously, courts cannot allow "ambiguous legislative history to muddy clear statutory language." *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011). Thus, the fact that Congress sought to fix a supposed issue tells us nothing.

What's more, the dissent's framing conceals a fatal error. The dissent studies the House Report and then somehow equates "limited partner" with "passive investor." The problem is that the dissent has no authority for this supposed meaning of "limited partner." The plain text of the statute does not yield that result. Neither does the House Report.

All told, even if we were to consider the legislative history at issue, it does not support the IRS, the Tax Court, or the dissent's arguments.

F

Finally, we offer a few additional responses to the dissent.

*First*, in the dissent's view, the IRS instructions on Form 1065 are dispositive. But the dissent misunderstands the Form.

Form 1065 provides that "[g]enerally, a limited partner's share of partnership income . . . is not included in net earnings from self-employment." ROA.926–27. And "[l]imited partners treat as self-employment earnings only guaranteed payments" for services they rendered to the partnership. *Id.* at 927. To the dissent (and to the Tax Court), the word "generally" means that "it is not always true that a limited partner's share of

partnership income is excluded from net earnings from self-employment." *Post*, at 41 (quotation omitted).

*The very next sentence*, however, demonstrates that the word "generally" refers only to the carve-out for guaranteed payments. *See* ROA.927. So Form 1065 does not cognize a broad exception to fundamental principles of partnership taxation. Instead, read in context, Form 1065 merely describes the commonsense notion that a limited partner's share of income is not included in his self-employment earnings, unless those earnings are from services rendered to the partnership.

What's more, embracing the dissent's logic would mean that even parties who followed the clear text of federal tax law *and the instructions on a tax form* would still lose if the IRS were to change its interpretation. That result would undermine core rule-of-law principles such as fair notice. *See Snyder*, 603 U.S. at 610.

*Second*, the dissent emphasizes the facts of this dispute. *Post*, at 40–45. The dissent argues that Sirius's partners had supposedly unusual employment relationships and at one point signed a document stating they were general partners. *Ibid.* To the dissent, those facts mean that this state law limited partnership was not really a limited partnership. Under that theory, if a court does not like what limited partners are doing, perhaps it can say the partnership is not really limited.

But that argument also fails. For one, it is no answer to the statute's plain text. As we have explained, the phrase "limited partner" refers to someone with limited liability. So the fact that a partner with limited liability has varying levels of involvement is neither here nor there.

Even worse, the dissent cannot be reconciled with longstanding principles of corporate law. For over one hundred and fifty years, federal courts have recognized that business entities are creatures of state, not federal, law.

*Ohio & Miss. R.R. Co. v. Wheeler*, 66 U.S. 286, 297 (1861). Sure, those entities were subject to federal tax laws. *See Burnet v. Harmel*, 287 U.S. 103, 110 (1932); *Post*, at 37–38. But at no point did Congress recognize or create a federal corporate entity or partnership law scheme. Instead, it enacted the Tax Code against a backdrop of state law principles. And Congress has long been aware of, and harmonized its legislation with, those state law principles. *See United States v. Bestfoods*, 524 U.S. 51, 62 (1998) (explaining Congress would not have wanted to upset "bedrock" features of the common law like corporate law). According to the dissent, however, a *limited partner* under state law can somehow transform into a *general partner* for federal tax purposes, and vice versa. This sort of federal common law of partnerships has no basis in history or tradition.[7]

*Third*, the dissent offers a smattering of textualist arguments. It asserts that it is adopting a fair reading of the Code while we are adopting a hyper-literal reading, *see post*, at 35, that we are misreading dictionaries, *see id.*, at 34–35, and that interpreting "limited partner" to require limited liability renders the phrase "as such" a surplusage, *see id.*, at 41.

But these purported flaws do not hold up to scrutiny. For one, our reading of the statute is a fair one. It embraces the simple idea that "limited

---

[7] And, insofar as the dissent now references Delaware's state-law standard, that only proves the point. *See post*, at 37–38. In Delaware, a partner can lose their limited liability if they play too active of a role in a limited partnership. DEL. CODE ANN. tit. 6, § 17-303(a). Under our reading, because that individual lost their limited liability as a matter of state law, they would be subject to taxation. But that is not what the Government argued here. Instead, they said that *regardless* of whether the partner enjoys limited liability under state law, the IRS could simply declare the partner was no longer limited—*even if they enjoyed limited liability in Delaware*. Thus, the partner could maintain so little control that they are a limited partner under Delaware law and thereby enjoy limited liability under state law, and yet be subject to (and fail) a *second*, judge-made test for control. In our view, that position is self-defeating. The better view is to follow how a state defines a limited partner.

partner" requires "limited liability." That construction honors the general rules of statutory interpretation: approaching the words as an ordinary reader would. Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 Harv. L. Rev. 2118, 2103 n.158 (2016) (book review). Here, that ordinary reading is clear. And it points towards a focus on limited liability.

Likewise, the dissent's arguments about dictionaries fall flat. In brief, the dissent says that many of the dictionaries we cite include language about limited partners being those who take no part in running a business, or those who comply with other requirements outlined in law. *See post*, at 34–35. But as we have explained, each of the dictionaries places an emphasis on what liability each partner faced. *See ante*, Part II.A. That conclusion is not the result of "culling out" specific words—it is a straightforward reading of the dictionaries. *Post*, at 34–35. If a partner enjoyed limited liability, they were a limited partner. The fact that some dictionaries had secondary definitions of "limited partner" that focused on the type of work a partner did does not change the primary focus of those definitions: limited liability.

And as to surplusage, we've explained that "as such" performs work under our reading. It clarifies how individuals who serve as both a limited and general partner are to be taxed. Thus, our reading does not violate the rule against surplusage, either. So the dissent's textual arguments fail.

At bottom, in any complex statutory dispute, the best course is to follow the statute's plain text. When § 1402(a)(13) says "limited partner," it is referring to a limited partner in a state-law limited partnership that has limited liability. In sum, the IRS, and Tax Court, and dissent's arguments for a passive investor rule fail.[8]

_____

[8] Even if the IRS and Tax Court's arguments had persuasive authority, they would *at most* establish ambiguity. But that is not enough for the Government's passive investor

No. 24-60240

\*    \*    \*

We hold that a "limited partner" in § 1402(a)(13) is a limited partner in a state-law limited partnership that is afforded limited liability. And we reject the IRS's newly adopted passive investor rule. Because the Tax Court upheld the IRS's adjustment of Sirius's net earnings from self-employment based on the erroneous passive investor rule, we VACATE and REMAND for further proceedings consistent with this opinion.

---

rule to prevail. It is a "longstanding canon of construction that if the words of a tax statute are doubtful, the doubt must be resolved against the government and in favor of the taxpayer." *United States v. Marshall*, 798 F.3d 296, 318 (5th Cir. 2015) (quotation omitted).

No. 24-60240

JAMES E. GRAVES, JR., *Circuit Judge*, dissenting.

Because the text and structure of 26 U.S.C. § 1402(a)(13) are clear that its tax exemption for limited partners applies only to those functioning as passive investors, I would affirm the Tax Court's decision upholding the adjustments to Sirius Solutions' federal tax returns for 2014, 2015, and 2016. Thus, I respectfully dissent.

I.

Sirius Solutions L.L.L.P. (Sirius) is a limited liability limited partnership under the state law of Delaware that operates as a business-consulting firm based in Houston, with additional offices in Dallas and London.[1] Sirius is treated as a partnership for federal income tax purposes. In 2002, each of Sirius' individual partners signed its Statement of Qualifications as "General Partner." Sirius Solutions GP, L.L.C. (Sirius GP), also formed under the state law of Delaware, is the tax matters partner (TMP) of Sirius, as defined in 26 U.S.C. § 6231(a)(7) (2014). Sirius GP is the general partner of Sirius. This appeal concerns Sirius' federal tax returns for 2014, 2015 and 2016.

In 2014, Sirius had two classes of partnership interests, Class A Units and Class B Units, and was owned by nine individual partners and the general partner, Sirius GP.[2] Sirius GP held a 0.6457% interest. Four individual partners sold their partnership interests in 2014, with two of them becoming employees of the partnership. Thus, in 2015 and 2016, there were five individual partners and Sirius GP, which held a 0.7529% interest. The

_____

[1] *See* Del. Code Ann. tit. 6, §§ 17-101(8)-(9), 17-301(a)(2) (2014).

[2] Class A units were purchased from the Partnership in exchange for a five-year installment note payable to the partnership.

individual partners were allocated a share of Sirius' income or loss during the relevant years.

Sirius reported ordinary business income of $5,829,402 in 2014, $7,242,984 in 2015, and –$490,291 in 2016. None of that income was allocated to Sirius GP. Instead, that income was allocated to the individual partners. However, Sirius did not report any net earnings from self-employment to any of the individual partners.[3]

On June 12, 2020, the Commissioner of Internal Revenue issued a TMP Notice of Final Partnership Administrative Adjustment (FPAA) to Sirius GP, as tax matters partner for Sirius (collectively referred to as "Sirius" in the singular). The Commissioner determined that an adjustment was appropriate to the amount Sirius reported on its 2014 federal tax return as net earnings from self-employment. Of particular relevance here, the adjustment notice said:

> (2) Net earnings (loss) from self-employment
>
> It is determined that your ordinary income from business consulting services is included in net earnings from self-employment for which your individual partners are liable for the self-employment tax imposed by IRC § 1401. It is further determined that your individual partners are not "limited partners" within the meaning of IRC § 1402(a)(13), and thus their distributive shares of the partnership's ordinary business income are not excluded from their net earnings from self-employment. Therefore, the net earnings from self-employment is $5,915,918.00 rather than $0.00 as shown on

---

[3] The Internal Revenue Code (IRC) imposes Social Security and Medicare taxes on net earnings from self-employment. 26 U.S.C. § 1402(b). The meaning of "net earnings from self-employment" is defined by statute and includes various exceptions. 26 U.S.C. § 1402(a).

your return.    Accordingly, the net earnings from self-employment is increased by $5,915,918.00.

On September 4, 2020, Sirius petitioned the Tax Court for readjustment of the FPAA adjustment, asserting that the Commissioner erred in determining that the individual partners were not "limited partners" for purposes of section 1402(a)(13). *See* 26 U.S.C. § 6226(a) (2014). The Commissioner responded on November 20, 2020.

On June 21, 2021, the IRS issued FPAAs to Sirius determining similar adjustments to Sirius' 2015 and 2016 net earnings from self-employment. For 2015, the Commissioner determined that the net earnings from self-employment should be increased from $0.00 to $7,372,756.00. For 2016, the Commissioner determined that the net earnings from self-employment should be decreased by $490,291.00. On September 17, 2021, Sirius filed a second Tax Court petition seeking readjustment of the 2015 and 2016 adjustments. The two petitions were consolidated for consideration.[4]

On November 28, 2023, the Tax Court issued the precedential opinion of *Soroban Capital Partners, LP v. Commissioner*, 161 T.C. 310 (2023), which effectively resolved the issue here.[5]    The parties subsequently stipulated that *Soroban* was controlling and resolved all outstanding issues, but Sirius maintained it was incorrectly decided. As a result, Sirius asked the Tax Court to enter a decision under Tax Court Rule 251 in favor of the

---

[4] As Sirius acknowledges, the adjustments do not represent the amount of taxes that would be owed. The adjustments would be allocated to each partner for purposes of determining the partner's net earnings from self-employment subject to taxation.

[5] As discussed herein, the Tax Court also reaffirmed its *Soroban* decision in the similar challenge of *Denham Capital Management LP v. Commissioner*, T.C. Memo. 2024-114, 2024 WL 5200039 (Dec. 23, 2024). *See also Soroban Capital Partners LP v. Commissioner*, T.C. Memo. 2025-52, 2025 WL 1517432 ( May 28, 2025).

No. 24-60240

Commissioner so that it could appeal the holding in *Soroban*.  On February 20, 2024, the Tax Court issued decisions upholding the adjustments.  The Tax Court also denied each party's pending summary judgment motions as moot.  Sirius appealed.

## II.

This court reviews a decision of the Tax Court under the same standard that is applied to district court decisions. *Green v. C.I.R.*, 507 F.3d 857, 866 (5th Cir. 2007).  "Findings of fact are reviewed for clear error and issues of law are reviewed de novo.  Clear error exists when this court is left with the definite and firm conviction that a mistake has been made."  *Id.* (internal citation omitted).

## III.

The issue on appeal is whether the Tax Court erred in its interpretation of "limited partner, as such" in 26 U.S.C. § 1402(a)(13), which was enacted in 1977. Section 1402(a)(13) excludes from net earnings of self-employment[6] the following:

> [T]here shall be excluded the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in section 707(c) to that partner for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration for those services.

26 U.S.C. § 1402(a)(13).

Section 707(c) states:

---

[6] Section 1402(a) also defines net earnings from self-employment.  26 U.S.C. § 1402(a).

28

> To the extent determined without regard to the income of the partnership, *payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership*, but only for the purposes of section 61(a) (relating to gross income) and, subject to section 263, for purposes of section 162(a) (relating to trade or business expenses).

26 U.S.C. § 707(c) (emphasis to reflect the limited portion quoted by the majority). Section 61(a) generally defines gross income. 26 U.S.C. § 61(a). Section 162(a) sets out allowable deductions for ordinary and necessary trade or business expenses. 26 U.S.C. § 162(a). Section 263 states which capital expenditure deductions are not allowed. 26 U.S.C. § 263.

The Tax Court previously considered the application of § 1402(a)(13) in the context of other entities.[7] In *Renkemeyer, Campbell & Weaver v. Commissioner*, 136 T.C. 137 (2011), the Tax Court considered the issue of whether income allocated to partners of a law firm organized as a limited liability partnership (LLP) under the laws of Kansas was subject to self-employment tax.[8] 136 T.C. at 138. In doing so, the court explained the history behind § 1402(a)(13) and applied the principles of statutory construction to ascertain Congress' intent. *Id.* at 148-150. Because the statute does not define "limited partner," the Tax Court looked to its

---

[7] The majority fails to discuss or distinguish any of these cases preceding *Soroban* or the impact of this decision on those cases. Instead, the majority states that they are collectively "irrelevant," yet also potentially "erroneous." The majority later states: "Although we refer only to membership in a limited partnership throughout this opinion, we do not discuss whether members of another entity, such as an LLP or LLC, may also qualify for the limited partner exception." Regardless of the entity, the meaning of "limited partner, as such" pursuant to § 1402(a)(13) applied by the Tax Court has not changed since *Renkemeyer* in 2011.

[8] Interestingly, the firm's practice emphasized Federal tax law. 136 T.C. at 138.

No. 24-60240

ordinary meaning and legislative history. *Id.* at 149-150. The court concluded that:

> The insight provided reveals that the intent of section 1402(a)(13) was to ensure that individuals who merely invested in a partnership and who were not actively participating in the partnership's business operations (which was the archetype of limited partners at the time) would not receive credits toward Social Security coverage. The legislative history of section 1402(a)(13) does not support a holding that Congress contemplated excluding partners who performed services for a partnership in their capacity as partners (i.e., acting in the manner of self-employed persons), from liability for self-employment taxes.

*Id.* at 150. The Tax Court also concluded that the LLP partners were not "limited partners" for purposes of § 1402(a)(13) because it was "clear that the partners' distributive shares of the law firm's income did not arise as a return on the partners' investment and were not 'earnings which are basically of an investment nature.'" *Id.* The court instead found that "the distributive shares arose from legal services they performed on behalf of the law firm" and that they were "subject to self-employment taxes." *Id.*

About six years later, the Tax Court considered the case of *Hardy v. Commissioner*, 113 T.C.M. (CCH) 1070 (Jan. 17, 2017). Dr. Stephen P. Hardy was a plastic surgeon who owned a minority interest in one of several surgery centers in which he performed surgeries. *Id.* at * 1, 4-7. However, Hardy had no day-to-day management or operational responsibilities in the center, which was organized as a limited liability company (LLC) in Montana. *Id.* The patients were responsible for choosing the location where the surgery would be performed, and the center or hospital billed separately for the use of the facility. *Id.* at * 4, 6. In relevant part, the issue was whether Hardy's income from the center was passive, which would allow the deduction of

30

passive activity loss for the year in which the loss was incurred. *Id.* at * 2. Applying the *Renkemeyer* functional analysis test, the Tax Court repeatedly referenced the fact that the surgeon was a passive investor and found his income from the surgery center was passive because he "received the distributions as a limited partner acting in his capacity as an investor." *Id.* at ** 2, 30-32.

Later that year, the Tax Court again applied the functional analysis test and found that member-managers of a law firm organized as a professional limited liability company (PLLC) under Mississippi law were not limited partners for purposes of the self-employment income exclusion. *See Castigliola v. Commissioner*, 113 T.C.M. (CCH) 1296, ** 3, 14 (Apr. 12, 2017); *see also* 26 U.S.C. 1402(a)(13). Acknowledging that the exact meaning of limited partner may vary slightly by state, the court considered the Uniform Limited Partnership Act (ULPA) of 1916, the Revised Uniform Limited Partnership Act (RULPA) of 1976, and amendments added in 1976 and 1985. *Id.* at 10. Specifically, the Tax Court quoted section 7 of ULPA (1916), as follows: "A limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business." *Id.* at * 10. The court then turned to section 303(a) of RULPA, which it noted that Mississippi had adopted with some modifications, for the proposition that "a limited partner would lose limited liability protection if in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business."[9] *Id.* at 10-11 (internal marks and citation omitted). The court also noted in its analysis that, "[b]efore the members organized the PLLC, they operated as

_____

[9] The majority cites to § 303(a) for a different purpose, as discussed herein.

a general partnership; and there is no evidence that organizing as a PLLC was accompanied by any change in the way they managed the business," and ultimately concluded that the partners "may not exclude any part of their distributive shares from self-employment income under section 1402(a)(13)." *Id*. at ** 13-14.

In 2023, the Tax Court considered *Soroban*, discussed more fully below, concluding that the *Renkemeyer* functional analysis test likewise applies in determining whether a limited partner in a state law limited partnership is entitled to the limited partner exception under § 1402(a)(13). 161 T.C. at 318-19. Following *Soroban*, the Tax Court reaffirmed its decision in *Denham Capital*, 2024 T.C.M. (RIA) 2024-114 (Dec. 23, 2024). In *Denham Capital*, the Tax Court also reiterated the following:

> Our caselaw has continuously reinforced our position that determinations under section 1402(a)(13) require a factual inquiry into how the partnership generated the income in question and the partners' roles and responsibilities in doing so. Petitioner's position that the Partners are eligible for the limited partnership exception merely because the Partners complied with formalities prescribed by state partnership law does not comport with our caselaw.

*Id*. at * 14 (citing *Renkemeyer*, 136 T.C. at 150; *Castigliola*, 113 T.C.M. 1296, at *7-14; *Hardy*, 113 T.C.M. 1070, at **29-32).

Soroban Capital Partners LP was a Delaware limited partnership composed of a general partner and limited partners. *Soroban*, 161 T.C. at 311. For 2016 and 2017, Soroban reported as net earnings from self-employment its guaranteed payments to its limited partners plus the general partner's share of ordinary business income. *Id.* The Commissioner later adjusted Soroban's net earnings from self-employment by increasing it to include the

limited partners' share of ordinary business income on the basis that they were limited partners in name only. *Id.*

In discussing the exclusion under section 1402(a)(13), the Tax Court reiterated that, "Congress intended for this limited partner exception to apply to earnings of an investment nature. To determine whether earnings allocated to limited partners are of an investment nature necessarily requires an inquiry into the functions and roles of the limited partners." *Id.* at 312. The Tax Court found that the "limited partner" exception does not apply to a partner who is limited in name only. *Id.* at 320. "If Congress had intended that limited partners be automatically excluded, it could have simply said 'limited partner.' By adding 'as such,' Congress made clear that the limited partner exception applies only to a limited partner who is functioning as a limited partner." *Soroban*, 161 T.C. at 320. The Tax Court also found that:

> Petitioner's reliance on legislative history to overcome the plain meaning of the statute is unavailing. To the extent legislative history might be used to shed light on the meaning of the phrase "limited partner, as such," it confirms our conclusion. Congress enacted section 1402(a)(13) to exclude earnings from a mere investment. It intended for the phrase "limited partners, as such" used in section 1402(a)(13) to refer to passive investors.

*Id.*

Consistent with all of the cases cited above, the Tax Court said that it must engage in an analysis of "the functions and roles of the limited partners in the partnership to determine whether their shares of earnings are excluded from net earnings from self-employment." *Id.* at 322-25. The Tax Court also found that such a determination is more appropriate at the partnership level than at the partner level. *Id.* at 323-24 (citing Treas. Reg. § 301.6231(a)(3)-1(b) and 26 U.S.C. § 6221). Thus, the Tax Court had jurisdiction.

Sirius asserts here that the Tax Court erred by interpreting "limited partner, as such" in *Soroban* to mean a partner functioning as a passive investor, and by not interpreting it as meaning a state-law limited partner. Sirius also argues that the Tax Court's interpretation of "as such" somehow renders "the carve-out for 'guaranteed payments' meaningless." Sirius asserts that "limited partner" is commonly defined as a partner in a state-law limited partnership with limited liability, and both the IRS and Social Security Administration have issued contemporaneous guidance defining it as such. Sirius cites various dictionaries for what it asserts is the common or ordinary meaning of "limited partner," as does the majority. However, much of this argument misses the mark.

Sirius and the majority offer only select portions of various definitions to form an oversimplified definition of "limited partner" to support its result. But those portions must be considered in context. For example, the Webster's Third New International Dictionary definitions for "limited partner" from 1971 and 1981, as quoted by the majority, state only that liability "is *usu[ally]* limited" and then add a second limitation: "providing he has not held himself out to the public as a general partner and has complied with other requirements of law." Webster's Third New International Dictionary 1313 (1971) and (1981) (emphasis added). The Black's Law Dictionary definition for "limited partnership" also states "limited partners who contribute capital and share in profits but who take no part in running business and incur no liability with respect to partnership obligations beyond contribution." Black's Law Dictionary (5th ed. 1979). The 1968 version likewise uses language describing a passive investor for "special partners" under the "limited partnership" paragraph of "partnership." Black's Law Dictionary (4th ed. rev. 1968).

The majority acknowledges that the Black's Law Dictionaries from 1968 and 1979 "seem[] to indicate" these limitations, but then simply ignores

those portions to focus on an oversimplified definition for "limited partner." In doing so, the majority concludes that, "[e]ach contemporaneous dictionary has one and only one characteristic in common: limited liability. The touchstone of a 'limited partner' in 1977 was limited liability." The majority asserts that "the alternative definitions that suggest a lack of participation in partnership affairs are in the minority." The majority later doubles down, saying that "[t]he fact that some dictionaries had secondary definitions of 'limited partner' that focused on the type of work a partner did does not change the primary focus of those definitions: limited liability." But I am not referencing secondary or "alternative" definitions. The majority is simply culling out specific words from the primary definitions to support its flawed conclusion.

The Commissioner asserts the following in response to Sirius' argument:

> Its focus on "the hyperliteral meaning" of limited partner does not "[a]dhere[ ] to the *fair meaning* of the text" (*Mejia v. Barr*, 952 F.3d 255, 260 (5th Cir. 2020) (quoting Antonin Scalia & Bryan A. Gardner, *Reading the Law: The Interpretation of Legal Texts*, at 356 (2012) (emphasis in original))), because it omits a key aspect of limited partnership: limited partners traditionally were passive investors who did not take an active role in the management or operation of the partnership's business. *See* Bromberg & Ribstein on Partnership, § 8.01[B], at 8-4 (2024-1 Supp.) (describing "typical hierarchy of limited partnerships" as "passive limited partners and controlling general partners"). It was that aspect of limited partnership that Congress had in mind when it enacted § 1402(a)(13).

I agree, and this likewise applies to the majority's conclusions.

While it is true that limited partners acting as limited partners usually have limited liability, the overwhelming authority cited herein establishes that limited liability depends on whether they are functioning as passive

investors.[10]  Hence, the basis for the functional analysis test applied by the Tax Court in *Renkemeyer*, 136 T.C. at 150; *Hardy,* 2017 WL 168471; *Castigliola*, 113 T.C.M. (CCH) 1296, \*\*3-5; *Soroban*, 161 T.C. at 318-19; *Denham Capital*, 2024 WL 5200039; and in this case.

Regardless, the issue is not simply the definition of "limited partner," the definition of "such," or whether a limited partner usually has limited liability.  Instead, the issue is what constitutes a "limited partner, as such" for purposes of section 1402(a)(13).  Sirius acknowledges as much with its additional arguments that the Tax Court misinterpreted the phrase "as such," as discussed herein.  The majority likewise acknowledges this but asserts:  "Perhaps recognizing the weakness of this argument, the IRS does not even raise this argument on appeal.  And for good reason.  It fails."  But the IRS raises the argument throughout its briefing, repeatedly asserting that "limited partners, as such" means passive investors.  The majority concedes as much but says, "[o]n appeal, the agency appears to recharacterize its arguments as speaking to the fundamental principles of federal taxation, and the ordinary meaning of limited partner rather than strict reliance on the words as such."  (Internal marks omitted).  I disagree.

The majority also states that "the Tax Court was mistaken to assume that the phrase 'as such' was without meaning unless it somehow severely restricted the scope of the term 'limited partner.'"  I disagree with the majority's assertion that the Tax Court assumed any such thing.

The majority then recounts its own interpretation, citing § 303(a) of RULPA and Del. Code Ann. Tit.6, § 17-404, and concluding that "[t]he phrase 'as such,' therefore, quite meaningful because it clarifies how

---

[10] Even under the majority's conclusion, it would still depend on how they were functioning.

individuals who serve as both a limited and general partner are to be taxed." However, the majority then maintains "[s]o the words 'as such' avoid ambiguity by clarifying that when functioning as a limited partner, a taxpayer's distributive share of partnership income (or loss) is excluded from net earnings from self-employment. But when functioning as a general partner, his distributive share is included in net earnings from self-employment."

In addressing that argument, the Tax Court said, if that was the purpose, then Congress could have simply said, "limited partner." *Soroban*, 161 T.C. at 320. "By adding 'as such,' Congress made clear that the limited partner exception applies only to a limited partner who is functioning as a limited partner." *Id.* My de novo review results in the same conclusion.

Additionally, as stated above, the majority cites both § 303(a) of RULPA and DEL. CODE ANN. Tit.6, § 17-404, in support of its interpretation. The majority later states that "the dissent cannot be reconciled with longstanding principles of corporate law. For over one hundred and fifty years, federal courts have recognized that business entities are creatures of state, not federal, law." As the Commissioner argues, federal law governs federal tax statutes, not state law. *Burnet v. Harmel*, 287 U.S. 103, 110 (1932); *Lyeth v. Hoey*, 305 U.S. 188, 193-94 (1938); *Morgan v. Commissioner*, 309 U.S. 78, 80-81 (1940). Although the majority concedes that business entities are subject to federal tax laws, it essentially argues that each state's definitions determine which entities are taxable. But such an unworkable proposition contradicts controlling authority. Federal power to tax income "is not subject to state control. It is the will of Congress which controls, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nation-wide scheme of taxation." *Burnet,* 287 U.S. at 110 (citations omitted).

No. 24-60240

This court reiterated *Burnet* in the context of taxation on an inheritance under Texas probate law. *Brown v. United States*, 890 F.2d 1329 (5th Cir. 1989). "The regulation at issue in this case represents an effort by the Commissioner to supply a needed definition, omitted by Congress, for the general term 'period of administration.'" *Id.* at 1336. "Although state probate laws would, of course, be pertinent," the court said that "the existence of an estate as a *taxable entity* is a question of federal, not state, law." *Id.* at 1337 (emphasis original).

Moreover, in a securities action where the limited partner argued it was a "passive investor" under Delaware's RULPA, the Third Circuit said that state law did "not necessarily equate to the threshold for finding a passive investor under federal securities laws." *Steinhardt Group Inc. v. Citicorp*, 126 F.3d 144, 155 (3d Cir. 1997). Because the limited partner was seeking relief for alleged violations of federal laws, "[f]ederal law therefore determines whether the investor's involvement is significant enough to place it outside the role of a passive investor." *Id.* I also direct the majority to the discussion from *Castigliola* above. 113 T.C.M. (CCH) 1296. Regardless, Delaware adopted the 1916 ULPA in 1973, and it was subsequently revised. 59 Laws 1973, ch. 105 (1973). Even the current version of Delaware's law includes a "control of the business" limitation, making a functional analysis test appropriate even if the majority were correct. Del. Code Ann. Tit.6, § 17-303.[11]

---

[11] The majority proclaims that my discussion of their reliance on Delaware law somehow "proves the point." But I am disagreeing with their analysis—not adopting it. I also disagree with the majority's characterization of the Commissioner's argument here, in part because it ignores the role of the functional analysis test. However, the flip side of the characterization is the majority's argument that a partner limited in name only, even under state law, is not subject to federal taxation *regardless* of what role the partner plays.

No. 24-60240

The majority goes on to note that "[t]his argument solely based on the text is consistent with one House Report. *See* H.R. Rep. No. 95-702, pt. 1, at 40 (1977)." The House Report actually said the following:

> Under present law each partner's share of partnership income is includable in his net earnings from self-employment for social security purposes, irrespective of the nature of his membership in the partnership. Under the bill the distributive share of income or loss received by a limited partner from the trade or business of a limited partnership would be excluded from social security coverage. *However*, the exclusion from coverage would not extend to guaranteed payments (as described in section 707(c) of the Internal Revenue Code), such as salary and professional fees, received for services actually performed by the limited partner for the partnership. Distributive shares received as a general partner would *continue* to be covered. Also, if a person is both a limited partner and a general partner in the same partnership, the distributive share received as a general partner would *continue* to be covered under present law.

H.R. Rep. No. 95-702, pt. 1, at 40 (1977) (emphasis added).

The report indicates that "limited partner, as such" is intended to clarify that the exception applies only to a limited partner who is functioning as a limited partner, i.e., a passive investor versus a limited partner in name only. The report also tells us the following: 1) that under present law each partner's share of partnership income is included in net earnings from self-employment regardless of the nature of membership in the partnership; 2) the bill was changing the law so that the portion of the distributive share received by a limited partner would be excluded; and 3) that exclusion would not apply to a limited partner in name only. *Id*. at 40-41. Congress did so because investors who performed "no services" for the partnerships were obtaining Social Security insurance by virtue of investment. *Id*. at 40-41.

39

"This situation is of course inconsistent with the basic principle of the social security program that benefits are designed to partially replace lost earnings from work." *Id.* at 41.

This indicates that the exclusion would only apply to passive investors. In other words, "this argument solely based on the text is consistent with one House Report," as stated by the majority and quoted previously herein.[12] Further, under the majority's interpretation, there would be no need for a phrase to clarify how individuals who serve as both a limited and a general partner would be taxed because that was not being changed, i.e., "the distributive share received as a general partner would continue to be covered under present law." *Id.* at 40.

During the period in question, Sirius asserts that it excluded the individual partners' distributive shares of partnership income or loss from net earnings from self-employment under section 1402(a)(13) and the instructions for the partnership income tax return, IRS Form 1065, and for the Schedule SE, Self-Employment Tax Form 1040.

Sirius points to language from the instructions for IRS Form 1065, which says in relevant part:

> Generally, a limited partner's share of partnership income (loss) is not included in net earnings (loss) from self-employment. Limited partners treat as self-employment earnings only guaranteed payments for services they actually rendered to, or on behalf of, the partnership to the extent that those payments are payment for those services.

---

[12] The majority takes issue with any reliance on legislative history by "[t]he IRS, the Tax Court, and the dissent" for the very same purpose for which the majority relies on it.

No. 24-60240

Citing *Soroban,* Sirius asserts that the Tax Court improperly viewed "[g]enerally" as a qualifier that "makes clear that it is not always true that a limited partner's share of partnership income is excluded from net earnings from self-employment." Sirius asserts that the instructions defined "limited partner" as "a partner in a partnership formed under a state limited partnership law, whose personal liability for partnership debts is limited to the amount of money or other property that the partner contributed or is required to contribute to the partnership." Further, the instructions said that "[a] limited partnership is formed under a state limited partnership law and composed of at least one general partner and one or more limited partners." Sirius argues that it was simply following the return instructions. However, the Tax Court was clearly correct: "Generally" *is* a qualifier. Also, as the Tax Court said with regard to the instructions: "[T]his definition is provided as part of the 'General Instructions' and 'Definitions.' This is not, and does not purport to be, a definition for purposes of self-employment tax." *Soroban*, 161 T.C. at 322. Moreover, the Tax Court relied on "the canon against surplusage," as follows:

> Under the canon against surplusage, we give effect to every clause and word of a statute. *United States v. Menasche*, 348 U.S. 528, 538–39 (1955). "When construing a statute, the Court must interpret it 'so as to avoid rendering any part of the statute meaningless surplusage.'" *Growmark, Inc. & Subs. v. Commissioner*, No. 23797-14, 160 T.C., slip op. at 11 (May 16, 2023) (citing *15 W. 17th St. LLC v. Commissioner*, 147 T.C. 557, 586 (2016)); *see also Tucker v. Commissioner*, 135 T.C. 114, 154 (2010) ("[W]e decline to read words out of the statute; rather, we attempt to give meaning to every word that Congress enacted ...."), *aff'd*, 676 F.3d 1129 (D.C. Cir. 2012).

*Soroban*, 161 T.C. at 320. Yet, Sirius and the majority both essentially read "as such" out of the statute.

The majority also states the following:

> From 1976 to 2022, the IRS issued instructions interpreting "limited partner" as a partner with limited liability in a limited partnership. That is "especially useful" in determining the meaning of "limited partner." *Loper Bright*, 603 U.S. at 394; *accord Bittner*, 598 U.S. at 97 & n.5. All the more so here, as the IRS's instructions "explain the requirements of the Internal Revenue Code" to the public and "help taxpayers comply with the law." 26 C.F.R. § 601.602(a); *see also, e.g., Snyder v. United States*, 603 U.S. 1, 10 (2024) (interpreting a statute in light of "fair notice" concerns).

The majority originally cites *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024), for the proposition that courts must exercise independent judgment. I agree with that proposition, as it is consistent with our "de novo" review. But I do not entirely agree with the purpose for which the majority cites *Loper Bright* in the above quote.[13] In context, the Court said:

> The [Administrative Procedure Act] APA, in short, incorporates the traditional understanding of the judicial function, under which courts must exercise independent judgment in determining the meaning of statutory provisions. In exercising such judgment, though, courts may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes. Such interpretations constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance consistent with the APA. And interpretations issued contemporaneously with the statute at issue, and which have

---

[13] I also disagree with the majority's repeated citation to *Loper Bright* for quotes in sentences in which it includes "limited partner." That gives the impression that "limited partner" is also a quote from *Loper Bright*. It is not.

remained consistent over time, may be especially useful in determining the statute's meaning.

*Id.* at 394 (internal marks and citations omitted). I agree that the Court said that agency interpretations that have remained consistent over time may be especially useful. But the Court said nothing to suggest that an instruction for filling out a tax form constitutes an agency's "interpretation" of either the definition of "limited partner" or when § 1402(a)(13) does or does not apply. Even if it did, it would just be useful—not overcome everything to the contrary. Regardless, as the Commissioner asserts, the instructions are not inconsistent with its position here.[14]

Sirius likewise argues that the Schedule SE instructions also say that "[limited] partners should include only guaranteed payments for services actually rendered to or on behalf of the partnership." Sirius also asserts, "[t]here were no further instructions about how to determine if an individual is a limited partner, as that term had a commonly understood meaning on which individuals could rely to easily complete their returns." But, again, this does not purport to be a definition for purposes of self-employment tax, and the instructions are not inconsistent with the Commissioner's position. Additionally, the beginning of the paragraph from which Sirius quotes states: "If you were a general or limited partner in a partnership, include on line 1a or line 2, whichever applies, the amount of net earnings from self-employment ...."

The Commissioner asserts that *Soroban* was correctly decided and relies on 26 U.S.C. § 702(a)(8) and 26 U.S.C. §§ 1402(a), (b) for the

---

[14] The majority dedicates a lengthy footnote to mischaracterizing as a question my factual statement that the *Loper Bright* Court said nothing to suggest that the tax form instructions constitute an agency's interpretation. But the majority fails to establish that the instructions are inconsistent with the Commissioner's position here.

proposition that self-employed individuals owe tax on their self-employment income, including a taxpayer's distributive share of income from any trade or business operated by a partnership of which he is a member. The Commissioner maintains that section 1402(a)(13) was enacted as a solution to avoid situations where taxpayers who were not covered by Social Security could obtain coverage by passively investing small amounts in limited partnerships and paying small amounts of self-employment tax without performing any work or services. However, now individual partners, who actively provide services, are attempting to rely on a state-law designation of "limited partner" to avoid paying any self-employment tax. The Commissioner is correct for the reasons stated herein.

The Commissioner also argues that the Tax Court correctly determined that the individual partners in Sirius were not limited partners for purposes of section 1402(a)(13) during the years in question. Sirius originally formed as a limited partnership but converted to a limited liability limited partnership in 2002. The Commissioner notes that, at that time, each of the individual partners signed the Statement of Qualification as "General Partner." In 2005, Sirius amended its certificate to include Sirius GP as its general partner. The Commissioner points out that Sirius GP was organized for this sole purpose. Various amended limited partnership agreements followed.

As the Commissioner asserts, the management and control of Sirius rested exclusively with Sirius GP and its delegated board of directors. However, Sirius GP was not entitled to receive any compensation or fees for its services as general partner, the board did not hold formal meetings or receive compensation, and Sirius GP only provided services to Sirius during the relevant time period. Further, only a limited partner or his affiliate was permitted to own an interest in Sirius GP, which was wholly owned by some of the individual partners.

No. 24-60240

While the agreements purported to provide that limited partners would not participate in the management or control of Sirius other than in exercising their limited partner rights, each partner also agreed to a covenant not to engage in outside employment or consulting activity. As the parties stipulated, the individual partners each had specific titles and roles, and performed specific services within the business. The parties also stipulated that each of the individual partners "worked exclusively for Sirius" and "devoted large amounts of their time to Sirius" during the tax years 2014, 2015, and 2016, and performed functions such as the following: "[D]elivered services on client engagements, developed the business, supervised staff, and billed hours on client engagements. They selected staff for specific engagements and negotiated client engagements. They participated in decisions to hire, evaluate, and terminate staff." These functions are all indicative of "management or control."

The record here clearly establishes that the individual partners were not merely passive investors but were "limited" in name only. Sirius has failed to establish that the Tax Court erred either in deciding *Soroban* or in relying on it in this case. For these reasons, I would affirm the Tax Court. Thus, I respectfully dissent.